Filed 1/13/15  Certified for publication 2/4/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| INVESTORS EQUITY LIFE HOLDING COMPANY,<br><br>    Plaintiff and Appellant,<br><br>      v.<br><br>JEFFREY P. SCHMIDT et al.,<br><br>    Defendants and Respondents. | G048284<br><br>(Super. Ct. No. 30-2009-00119128)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Nancy Wieben Stock, Judge.  Reversed and remanded.  Request for Judicial Notice denied.

Lewis Brisbois Bisgaard & Smith, Joseph K. Hegedus and Caroline E. Chan; and Parker Shumaker & Mills, David B. Parker and Theodore W. Frank, for Plaintiff and Appellant.

Daley & Heft and Lee H. Roistacher; Locke Lord, C. Guerry Collins and Michelle C. Ferrara; and Lewis Roca Rothgerber, Frank D. O'Loughlin and Cindy C. Oliver, for Defendants and Respondents.

Plaintiff Investors Equity Life Holding Company appeals from the judgment dismissing this case on the ground of forum non conveniens. Plaintiff filed its complaint in 2009, and the trial court originally ordered the action stayed on the ground of forum non conveniens. Plaintiff appealed that order and we affirmed in a published decision. (*Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519 (*Investors Equity I*).) In our opinion, we first considered whether Hawaii qualified as a suitable alternative forum for adjudicating plaintiff's claims, affirming the trial court's assessment that it did. We then rejected plaintiff's contention that the court had nonetheless abused its discretion in concluding that the balance of public and private factors favored Hawaii as a forum over California. In the course of assessing the latter issue, we also rejected plaintiff's claim that as a California resident, its choice of forum was entitled to great weight. Somewhat confusingly, we characterized plaintiff's claim to California residency as both "erroneous" and merely "doubtful." (*Id*. at pp. 1534-1535.)

In 2012, defendants "renewed" their motions, seeking an order dismissing, rather than merely staying, the action. In their renewed motions, defendants seized on statements in our opinion – in particular our rejection of plaintiff's claim of California residency – claiming those statements were law of the case, and reflected a material change in circumstance that warranted an outright dismissal of this case. The trial court agreed. We conclude the trial court's order reflected an abuse of its discretion and reverse.

The lynchpin of any order granting a motion based on forum non conveniens is a determination that a suitable alternative forum exists. It is only after the trial court reaches that conclusion that it would even consider whether the benefits of the proposed alternative forum outweigh the reasons for keeping the litigation in California. In this case, the trial court's original assessment of Hawaii's suitability, as well as our opinion affirming that assessment, was based in part on the promises and stipulations entered into by defendants *in this forum*. Having relied on those representations as a

2

basis for our rulings, we have an interest in retaining jurisdiction to ensure plaintiff has a remedy in the event defendants do not comply with those promises in the alternate forum. Moreover, our assessment of Hawaii's suitability as an alternative forum was also based on our own analysis of Hawaii's statutes of limitations, which we concluded operated similarly to California's. However, because our analysis of Hawaii law is not binding on any proceeding conducted in Hawaii's own courts, we also explained that "in the event our understanding of Hawaii law is incorrect," the fact that this case was merely stayed, rather than dismissed, meant "plaintiff will have the opportunity to seek relief in the courts of this state." (*Investors Equity I, supra,* 195 Cal.App.4th at p. 1534.)

The trial court's subsequent decision to dismiss the action undermined both of those bases for the original suitability finding. If this case were dismissed, California would forfeit its power to act in the event the promises made by defendants in this forum are not complied with, or to offer plaintiff any relief if Hawaii ultimately interprets its own laws in a manner which materially differs from what we had anticipated. Under these circumstances, it was error to order this case dismissed before the parties' dispute is finally resolved in Hawaii.

Additionally, the trial court erred in treating our rejection of plaintiff's residence claim as law of the case. The doctrine of law of the case applies only to *legal principles* applied on appeal; it has no application to factual determinations, such as whether plaintiff provided adequate evidence to support a claim of residence status for purposes of a forum non conveniens motion. And when defendants renewed their motion following our remand of the case to the trial court, and sought an outright dismissal of this case, plaintiff was entitled to rely on new evidence supporting its claim of significant ties to California. The court erred when it refused to consider that evidence in assessing whether California had an interest in retaining jurisdiction.

Defendants have requested we take judicial notice of plaintiff's petition for rehearing in the earlier appeal, and our denial of that petition. The request is denied.

3

FACTS

In our prior opinion, we summarized the dispute and circumstances surrounding defendants' initial forum non conveniens motion. We repeat that summary here.

"The first amended complaint alleges plaintiff is the sole shareholder of Investors Equity Life Insurance Company of Hawaii, Ltd. (IEL), an insurance company currently the subject of a liquidation action in the Hawaii Circuit Court for the First Circuit." (*Investors Equity I, supra*, 195 Cal.App.4th at p. 1523.)

"IEL was a life insurance company organized under and regulated by the State of Hawaii with approximately 99 percent of its policyholders residing in that state. Plaintiff alleges it is a Delaware Corporation 'authorized to transact business as a foreign corporation in . . . California.' It acquired all of IEL's shares in 1991.

"According to the amended complaint, in 1993 plaintiff received authorization from the Hawaii Division of Insurance to enter into what are described as epurchase transactions'" and to invest in '"hedging transactions."' The next year, defendant Reifurth became Hawaii's Insurance Commissioner. He filed an action in Hawaii state court to seize and rehabilitate IEL, claiming the repurchase and hedging transactions had rendered the insurer insolvent. (*Reifurth v. Investors Equity Life Ins. Co. of Haw., Ltd.* (Hawaii Cir.Ct., 1994, S.P. No. 94-0337).) IEL's president stipulated to appointing a deputy insurance commissioner as the insurer's rehabilitator. The amended complaint alleges defendant McCorriston, a lawyer with the McCorriston law firm, which represented Reifurth, allegedly told plaintiff 'if anything is left over in IEL's estate after rehabilitation or liquidation . . . , then that remainder will go to [p]laintiff as the sole shareholder.'

"Reifurth later obtained an order liquidating IEL. Plaintiff appealed that ruling, but the Hawaii Supreme Court affirmed, holding plaintiff lacked standing to

4

oppose the insurance commissioner's liquidation petition. (*Metcalf v. Investors Equity Life Ins. Co. of Hawai'i, Ltd.* (1996) 80 Hawaii 339.) As noted, the liquidation action is still pending.

"In late 1994, Reifurth, represented by the McCorriston law firm, filed an action in Hawaii state court against plaintiff and its owner, Gary Vose, alleging fraud and misuse of IEL's funds. (*Reifurth v. Vose* (Hawaii Cir.Ct., 1994, No. 94-4337-11).) The parties reached a settlement terminating this lawsuit in August 1996. Plaintiff also alleges that, in 1995, IEL entered into a reinsurance assumption agreement with the then Hawaii Insurance Commissioner, defendant Association, and Hartford Life [140] Insurance Company under which IEL 'transferr[ed] almost all insurance policy-related liabilities . . . to Hartford.'

"According to the amended complaint, '[a]t no time did IEL's directors authorize forfeiture and cancellation of IEL's shares of stock,' nor has '[p]laintiff surrendered its shares . . . for cancellation and forfeiture.' 'Neither Reifurth nor any other person holding the position of Hawaii Insurance Commissioner, or any person acting on behalf of a commissioner, has given timely and proper notice for [p]laintiff, or other person with interest, to cure any impairment that IEL had, and Reifurth and every other person holding the position of such commissioner have failed to take such other steps as would authorize him or her to effect cancellation and forfeiture of IEL's shares.' But a declaration submitted by defendant Yamano, a lawyer with the McCorriston law firm, asserts plaintiff surrendered its IEL stock under the settlement and Vose signed a document to that effect. Yamano further claims the settlement contained a choice of law clause applying Hawaii law.

"A focal point of the amended complaint is the purported transfer of IEL's stock to a trust controlled by the Association under a stock subscription agreement. Plaintiff alleges that, in December 1996, Wayne C. Metcalf III, then serving as Hawaii's Insurance Commissioner, filed a motion in the liquidation action seeking approval of that

agreement.  According to the amended complaint, '[a]lthough [p]laintiff was a party to the [l]iquidation [a]ction, [it] was not served with a copy of the [s]ubscription [a]greement at the time the . . . motion was filed . . . .'

"Plaintiff claims the stock subscription agreement is void because, by its terms, the agreement needed to be submitted to and approved by the court by December 31, 1996, and that was never done.  The amended complaint alleges defendants not only failed to serve plaintiff with a copy of the stock subscription agreement or timely submit that agreement to the court for approval, but also took other steps 'to misrepresent, deceive, and mislead concerning the . . . [a]greement and the purported transactions relating to that agreement' by which they 'defraud[ed plaintiff] and depriv[ed it] of its right, title, and interest in the monies and assets remaining in IEL's estate and IEL's stock . . . and value of such stock.'  It further alleges '[b]y a long series of intertwined, complex, and in many cases unlawful or improper transactions, . . . defendants have siphoned, or assisted others to siphon, monies in a variety of ways from IEL's estate.'

"According to the amended complaint, plaintiff first discovered evidence of defendants' wrongful conduct in March 2008.  Plaintiff claims it then learned a February 2008 interim report on IEL's assets contained 'a materially false and misleading entry . . . denot[ing] some sort of claim by the . . . Association' for over $35 million.  'When the balance sheet is adjusted to correct that entry alone, IEL has a surplus (positive net worth) of' over $21 million that 'rightfully belongs to [p]laintiff.'

"In February 2009, plaintiff filed the current action.  The first amended complaint alleges 14 counts, including causes of action for unlawful taking, denial of due process and equal protection, various species of fraud, breach of fiduciary duty, conversion, and unfair competition in violation of Business and Professions Code section 17200.

"Motions to stay or dismiss the California action for forum non conveniens were filed by defendants Schmidt, Reifurth, Yamano, McCorriston, the McCorriston law

6

firm, Komatsubara, one of IEL's liquidators, plus Timothy P. Bogan, a former examiner for Hawaii's Division of Insurance. Except for Bogan, these defendants claimed they were residents of or transacted business in Hawaii. Bogan had been a California resident, but his declaration supporting the forum non conveniens motion stated that as of July 2009 he became a resident of the Commonwealth of Virginia. Defendants McCorriston and Yamano acknowledged the McCorriston law firm has a Los Angeles office but denied either of them currently works at that location.

"After a hearing, the trial court ordered the action stayed pending further order of the court and set the matter for a status review hearing in March 2010. It acknowledged defendants had only made an informal offer to stipulate to toll the statute of limitations 'if necessary,' and it was still unclear 'whether all named defendants could be brought within the jurisdiction of the Hawaii [c]ourts' or whether they 'would be willing to submit to the jurisdiction' in Hawaii. Nonetheless, the court found Hawaii is a suitable alternative forum.

"Balancing the respective private and public interest factors, the court found they favored granting the motion. As for the private interests at stake, it noted 'the documentation and recordation of the acts claimed of[] repose in . . . Hawaii, as [d]o most, if not all[,] of the parties who would have been involved in the activity.' The court also gave 'some weight' to the fact 'California would have the most difficulty in securing personal jurisdiction over percipient witnesses . . . .'

"The court placed '[g]reat weight' on several public interest factors favoring jurisdiction in Hawaii. These included the Hawaii courts 'continuing supervisory jurisdiction over th[e] ongoing insurance company liquidation matter'; 'court orders purport[ing] to extend protection to some of the named defendants relative to their ability to manage and conserve the assets of the distressed [insurer]'; the 'potential' for 'conflicting interpretations by a foreign state of Hawaii's own orders'; the 'superior interest' of Hawaii citizens in the 'supervising [and] winding down of [a] distressed

7

insurance compan[y]' that 'served almost exclusively the insurance needs of Hawaii residents'; the fact '[k]ey named defendants are, or have been,' employed in state government departments focused on consumer affairs, particularly with respect to the 'consumer protection of Hawaii insureds'; plus Hawaii's 'substantial interest in regulating or fixing the conduct' that the 'lawsuit . . . intends to cure . . . .'

"Addressing the choice of law issue, the court found that even assuming Hawaii does not have a restitutionary remedy similar to Business and Professions Code section 17200, 'the cases are clear that the existence of a favorable statutory scheme or litigation-based public policy in one forum is not determinative.' Also '[a]s to any application of Hawaii law, including the possible direct or indirect application of principles of sovereign immunity, it has not been established that even if the case remained in California . . . a California court would not apply principles of comity, wherein the plaintiff's fate could be the same as if the case were tried elsewhere.'

"After plaintiff appealed from the stay order, all defendants executed a stipulation declaring '[s]hould [p]laintiff file any such action in Hawaii for the claims made . . . in this action, [d]efendants agree that any Hawaii statute of limitations was tolled from the date of the filing of the complaint in this action . . . to the earlier of such date upon which [p]laintiff may file or re-file any such action in Hawaii or March 3, 2010,' and '[s]hould [p]laintiff file an action in Hawaii . . . , no [d]efendant will contest personal jurisdiction in Hawaii.'

"The trial court continued the status review hearing based on the pendency of [the initial] appeal. Defendants [then] asked us to take judicial notice of a second stipulation filed in the superior court in July 2010. It repeats defendants' agreement not to contest personal jurisdiction in Hawaii and to toll 'any Hawaii statute of limitations . . . from the date of the filing of the complaint in this action . . . to the earlier of such date upon which [p]laintiff may file or re-file any such action in Hawaii or . . . 60[] days after

8

the Court of Appeal issues its remittitur . . . .'" (*Investors Equity I, supra*, 195 Cal.App.4th at pp. 1524-1528.)

"The primary issue presented" on appeal in *Investors Equity I* was "whether the trial court erred in finding Hawaii to be a suitable alternative forum." (*Investors Equity I, supra,* 195 Cal.App.4th at p. 1528.) We found no error, relying significantly on the stipulations filed by defendants in the trial court, as well as on our own assessment that Hawaii's statutes of limitations operated similarly to our own. However, as to the latter point, we acknowledged the possibility that Hawaii's courts might apply its laws differently than we anticipated, and explained that "[i]n the event our understanding of Hawaii law is incorrect," the fact that this case was merely stayed, rather than dismissed, meant "plaintiff will have the opportunity to seek relief in the courts of this state." (*Id.* at p. 1534.)

We then addressed plaintiff's secondary contention, which was that the trial court had also abused its discretion in concluding that the balance of relevant public and private interests favored Hawaii as the forum for this litigation. Noting our own obligation to "accord 'substantial deference' to the trial court's exercise of its discretion" (*Investors Equity I*, *supra*, 195 Cal.App.4th at p. 1534), we had little difficulty rejecting the contention. We pointed out that not only is "documentation relevant to plaintiff's claims . . . entirely in Hawaii, nearly all of the percipient witnesses are located there." (*Ibid*.) We also expressly concurred with the trial court's assessment that "Hawaii has a greater interest in litigation over the proper winding up of a Hawaii insurer that primarily did business in that state and even more so concerning whether Hawaii public officials are properly and honestly carrying out their official duties." (*Id*. at p. 1536.)

It was in the context of analyzing this secondary issue that we gave short-shrift to plaintiff's assertion that its status as a "California resident" meant its choice of forum "should be accorded great weight." (*Investors Equity I*, *supra*, 195 Cal.App.4th at p. 1534.) We characterized plaintiff's claim of residency at one point as "erroneous," but

9

then supported that characterization with the less-definitive explanation that plaintiff's "admission it has been authorized to transact business in California as a 'foreign corporation' *undermine[s] its status* as a California resident." (*Id.* at pp. 1534-1535, italics added.) We later referred to plaintiff's residency claim as merely "doubtful." (*Id.* at p. 1535.)

Following remand, defendants' filed what they called renewed motions to dismiss the case. Their motions relied entirely upon our prior opinion, arguing we had "expressly found" that they had "stipulated to personal jurisdiction in Hawaii should Plaintiff re-file the lawsuit there"; that "the statutes of limitation for Plaintiff's causes of action were the same in both California and Hawaii"; and that "Plaintiff is *not* a California resident." (Boldface omitted.) They also claimed that each of these findings "are now law of the case going forward."

Plaintiff opposed the motions, asserting that it was a California resident, and offering additional evidence to support that assertion. It argued that to the extent our prior opinion concluded otherwise, it was dicta. Plaintiff also contended that a dismissal of this case would be inconsistent with the fundamental reasoning of our prior opinion, and in support of that contention it asked the court to take judicial notice of documents reflecting the status of proceedings in Hawaii. Those documents reflected that even before we had even issued our opinion, the Hawaii Insurance Commissioner (one of the defendants herein) had issued a 10-page "Notice of Determination" of plaintiff's claim as a creditor in the IEL liquidation proceeding. That document appeared to define plaintiff's claim as including all causes of action asserted by plaintiff in this case, and then denied that claim in its entirety. Among other things, the notice concluded that plaintiff's core assertion in this case – that it had been improperly stripped of its shares in IEL – was untimely, both because it was required to have been asserted no later than December 1995, which was the "claims bar date" set forth in the original order approving IEL's

10

liquidation plan, and because all otherwise applicable statutes of limitations had been exceeded.

Plaintiff promptly objected to that notice, attempted to reserve its rights relating to jurisdiction, and challenged the decision in the Hawaii Circuit Court. After plaintiff's challenge was denied in the circuit court, it appealed. Plaintiff then applied to have its appeal transferred from the Hawaii Intermediate Court of Appeal, directly to the Hawaii Supreme Court. That application was granted in December 2011, and the case remained pending before the Hawaii Supreme Court.

In their reply, defendants objected to plaintiff's request for judicial notice of the status of Hawaii proceedings, arguing those proceedings were irrelevant to their motion, which had been based solely on the findings contained in our prior opinion. However, defendants did not dispute either the accuracy of the documents plaintiff provided, or the fact the parties' dispute was pending before the Hawaii Supreme Court.

Following the hearing on defendant's motion, the trial court's initial decision was to deny the request for dismissal of the case, and instead set the case for a further status conference six months hence. However, before the court issued any formal order denying defendants' motion, it instead "vacated its prior ruling or, in the alternative, advanced the [date of the status conference], and issued a 'Modified Ruling.'" The court's modified ruling was to grant the request for dismissal.

The court explained its decision to dismiss as follows: "Plaintiff is not a California resident. That is the law of the case. The evidence offered by Plaintiff on this point is therefore, irrelevant. Plaintiff is collaterally estopped from relitigating this issue. Therefore, the rights and presumptions asserted in Plaintiffs' Opposition simpl[y] do not apply. [¶] The Defendants have long ago taken care of the contingencies that lead to the Court's entering a stay vs. dismissal. Plaintiff has had many years to pursue his claims in the State of Hawaii. Evidence offered by both sides suggests that the litigation is ongoing in the State of Hawaii. That Plaintiff is dissatisfied with the procedures, outcomes and

11

current status is not relevant. He is having his day in court, this, without having filed any affirmative lawsuits since the pendency of this California lawsuit. The interests of justice are not served by holding the California docket open for years to come, only to merely review what the Parties are doing in another state."

DISCUSSION

*1. Forum non Conveniens Law*

The analysis to be applied in deciding motions based on forum non conveniens is well settled. "Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere. [Citation.] . . . [¶] In determining whether to grant a motion based on forum non conveniens, a court must *first determine* whether the alternate forum *is a 'suitable' place for trial. If it is*, the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California. The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation." (*Stangvik v. Shiley Inc*. (1991) 54 Cal.3d 744, 751, italics added (*Stangvik*).)

Key to assessing whether an alternative forum would be suitable is the determination that the forum would be able to exercise jurisdiction over the defendant,

12

and that plaintiff's claim would not be barred by its statute of limitations. (*Stangvik, supra*, 54 Cal.3d at p. 752 ["'the [California] suit will be entertained, no matter how inappropriate the forum may be, if the defendant cannot be subjected to jurisdiction in other states. The same will be true if the plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept the defendant's stipulation that he will not raise this defense in the second state'"].)

Moreover, in determining whether to grant a motion based on forum non conveniens, "[t]he trial court . . . has considerably wider discretion [when it chooses to merely stay, rather than dismiss, an action] precisely because under a stay California retains jurisdiction." (*Century Indemnity Co. v. Bank of America* (1997) 58 Cal.App.4th 408, 411.) Thus, as explained by our Supreme Court in *Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 860, a case notably similar to this one, when the assessment of the alternative forum's *suitability* is dependent upon factors beyond the control of the California courts – such as the interpretation of another state's laws – then a stay of the California litigation might be justified, when an outright dismissal would not be. In *Archibald*, the Supreme Court first acknowledged that assessing how Hawaii's courts would interpret its own class action law was inherently "speculative," but then concluded that such uncertainty did not preclude the court's grant of the forum non conveniens motion: "[T]he existence of unsettled questions of Hawaiian procedure does not compel the trial court to conclude as a matter of law that Hawaii is not a suitable alternative forum. Uncertainties such as this concerning the suitability of the foreign forum have prompted our holding that a court cannot dismiss a suit . . . , but can stay that suit: *the staying court can resume proceedings if the foreign forum proves unsuitable.*" (*Id.* at p. 862, italics added.)

That same analysis would also apply where a California court's assessment of an alternative forum's suitability depends on the defendant's stipulation – in the California litigation – to the jurisdiction of the alternate forum and to a tolling of the

13

applicable statutes of limitations if a case were litigated there. The California court could properly rely upon such a stipulation in making its ruling, or as happened in *Stangvik* itself, could expressly *condition* its ruling on the defendants' compliance with such requirements. (*Stangvik, supra*, 54 Cal.3d at p. 750, fn. 2.) However, once the litigation proceeds to the alternative forum, the California court would have no *direct* power to enforce the stipulation in that other forum, or to compel the defendants' compliance with its earlier conditional ruling. So by choosing to stay, rather than dismiss, the California litigation, the court retains at least the *indirect* power to do so: "[t]he staying court . . . can compel the foreign [party] to cooperate in bringing about a fair and speedy hearing in the foreign forum; it can resume proceedings if the foreign action is unreasonably delayed or fails to reach a resolution on the merits." (*Ferreira v. Ferreira* (1973) 9 Cal.3d. 824, 841; see *Stangvik,* at p. 750 [reflecting the court's retention of "jurisdiction to make such further orders as might become appropriate"].)

## 2. *Law of the Case Doctrine*

"Under the law of the case doctrine, when an appellate court '"states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress, both in the lower court and upon subsequent appeal . . . ."'" [Citation.] Absent an applicable exception, the doctrine 'requir[es] both trial and appellate courts to follow the rules laid down upon a former appeal whether such rules are right or wrong.' [Citation.] As its name suggests, the doctrine applies only to an appellate court's decision on a question of law; it does not apply to questions of fact." (*People v. Barragan* (2004) 32 Cal.4th 236, 246.)

Hence, "the law of the case doctrine is subject to an important limitation: it 'applie[s] only to *the principles of law* laid down by the court as applicable to a retrial of fact,' and 'does not embrace the facts themselves . . . .' [Citation.] In other words,

14

although an appellate court's *legal determination* constitutes the law of the case, 'upon a retrial . . . *that law* must be applied by the trial court *to the evidence presented upon the second trial*.' [Citation.] Thus, during subsequent proceedings in the same case, an appellate court's binding legal determination 'controls the outcome only if the evidence on retrial or rehearing of an issue is substantially the same as that upon which the appellate ruling was based. [Citations.]' [Citation.] Where, on remand, 'there is a substantial difference in the evidence to which the [announced] principle of law is applied, . . . the [doctrine] may not be invoked.'" (*People v. Barragan, supra,* 32 Cal.4th at p. 246, some italics added.)

Significantly, "nothing in the law of the case doctrine itself limits the additional evidence that a party may introduce on retrial to that which 'could not have been presented at the first trial through the exercise of due diligence.'" (*People v. Barragan, supra,* 32 Cal.4th at p. 247.)

*3. The Trial Court Erred in Applying the Law of the Case Doctrine to our Earlier Opinion*

Defendants' "renewed" motion to dismiss this case was based on three asserted "findings" made by this court in our earlier opinion: (1) the fact they had "stipulated to personal jurisdiction in Hawaii should Plaintiff re-file the lawsuit there"; (2) the determination that "the statutes of limitation for Plaintiff's causes of action were the same in both California and Hawaii"; and (3) the determination "Plaintiff is *not* a California resident." (Boldface omitted.) Defendants asserted that all of these findings "are now the law of the case going forward," and argued the first two were sufficient to establish Hawaii's suitability as an alternative forum, while the third demonstrated that California should have no significant interest in continuing to retain jurisdiction. However, in the context of this case, none of those asserted findings was entitled to the significance defendants attributed to them, and none qualified as law of the case.

15

The first "finding" relied upon by defendants – that following the trial court's initial order granting the forum non conveniens motion and ordering the case stayed, they elevated their *informal* promise to submit to personal jurisdiction in Hawaii should plaintiff refile its lawsuit there, into a *formal stipulation* – is just an unadorned fact. As such, it does not qualify as law of the case. (*People v. Barragan, supra*, 34 Cal.4th at p. 246 [law of the case applies only to principles of law, and "'does not embrace the facts themselves'"].) Moreover, the mere fact defendants *formally* promised, in this forum, to submit to the jurisdiction of Hawaii, is not nearly as significant in deciding whether this court should relinquish jurisdiction as is the determination of whether those defendants actually *followed through* on that promise in Hawaii. Defendants offered no evidence on that latter point.

The second "finding" relied upon by defendants – that "the statutes of limitation . . . were the same in both California and Hawaii" simply distorts the conclusion we reached. We certainly never purported to *decide* Hawaii law; instead, we expressly acknowledged that "our understanding of Hawaii law [might be] incorrect." (*Investors Equity I, supra,* 195 Cal.App.4th at p. 1534.) And we expressly relied on the fact this case had been stayed, rather than dismissed, in pointing out that if our understanding of Hawaii law proved wrong, plaintiff would still "have the opportunity to seek relief in the courts of this state." (*Ibid.*) Thus, a more accurate representation of our "finding" concerning the effect of Hawaii law is that while it appears to be similar to our own, we have no authority to make any binding determinations about how it will be applied by the Hawaii courts. If anything, that amounts to an explicit concession that the legal principals we have employed in analyzing Hawaii law *will not qualify* as law of the case.

The final, and most significant "finding" relied upon by defendants – that plaintiff's claim to California residency is "erroneous" – is likewise inappropriate as a basis for either applying the law of the case doctrine or dismissing this case. This issue

16

arose in the context of plaintiff's assertion that its choice of the California forum was entitled to significant deference in the trial court's assessment of whether California or Hawaii was the more appropriate forum. Plaintiff asserted, in rather conclusory fashion, that California was its principal place of business, and thus it qualified as a California "resident" for purposes of applying that rule.

However, plaintiff failed to recognize that the cases requiring significant deference to the forum choice of a "resident" who files suit in California involved *human* plaintiffs. (See, e.g., *Archibald v. Cinerama Hotels, supra*, 15 Cal.3d at pp. 858-859; *Thomson v. Continental Ins. Co.* (1967) 66 Cal.2d 738, 742; *Goodwine* v. *Superior Court* (1965) 63 Cal.2d 481, 485; *Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 488-489.) The justification for that deference is two-fold: "(1) if the plaintiff is a resident of the jurisdiction in which the suit is filed, the plaintiff's choice of forum is presumed to be convenient [citations]; and (2) a state has a strong interest in assuring its own residents an adequate forum for the redress of grievances." (*Stangvik, supra*, 54 Cal.3d at pp. 754-755.)

But neither the rule, nor its underlying justifications, applies in quite the same way to corporations or other business entities, which do not simply "reside" in one state or another in quite the same way that people do. A corporation may be large or small, simple or complex, and it may choose to be formed under (and subject to) the laws of one state, while conducting its business elsewhere. A large business could have a very significant presence in multiple states, which might suggest that *each of those states* could provide a presumptively convenient forum for litigation involving the corporate plaintiff, and each might claim varying degrees of interest in assuring that corporation has an adequate forum for redress of its grievances. (See *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 612 [noting that California has some interest in providing a forum to Ford Motor Company, because it "is a California taxpayer, employer and property owner"].)

17

Thus, in *National Football League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902 (*NFL*), the court rejected the plaintiff's claim of *residency* in California (based on the contention that "as an unincorporated association of member football clubs, it resides wherever its members are located" (*id*. at p. 919), concluding instead that in a forum non conveniens analysis involving a plaintiff business entity, the court should engage in a "case-by-case examination of the parties, their dispute and the relationship of each to the state of California" (*id.* at p. 921), rather than attempting to assess a plaintiff's *residence*.

Moreover, California law does not generally distinguish between corporations on the basis of whether they are "residents" or "nonresidents" of California – although that label is often used in cases addressing whether a specific *county* is a proper *venue* for a California lawsuit involving a corporation. (*Hale v. Bohannon* (1952) 38 Cal.2d 458, 462; *Sea World, Inc. v. Superior Court* (1970) 13 Cal.App.3d 100, 104; *Walker v. Wells Fargo Bk. & U. T. Co.* (1937) 24 Cal.App.2d 220-223; but see *Coulston v. Cooper* (1966) 245 Cal.App.2d 866, 868-869 [addressing whether a defendant presumed to be a foreign corporation, could properly be served with a notice under a statute applicable only to "nonresident" car owners].) The tendency to equate a corporation's principal place of business with its "residence" for venue purposes may result from reconciling Code of Civil Procedure section 395, which states the general rule that venue is appropriate in the county where a defendant "reside[s]" with Code of Civil Procedure section 395.5, which establishes the more specific rule that *a corporation* can be sued in the county where it has its "principal place of business."

Instead of categorizing corporations as "resident" or "nonresident," our corporate statutes distinguish between "domestic corporations," which are defined as those formed under California law (Corp. Code, § 167) and "foreign corporations" such as plaintiff, which are not. (Corp. Code, § 171.) Presumably, California would have a greater interest providing a forum for litigation involving its domestic corporations than it

18

would for litigation involving foreign ones. And while foreign corporations can conduct business within California after obtaining a certificate of qualification from the Secretary of State to do so – as plaintiff claimed it had done (Corp. Code, § 2105), such qualification does not suffice to transform the foreign corporation into a de facto domestic one, nor would it even obligate a foreign corporation to govern itself in accordance with California law. On the other hand, California law does provide that if a foreign corporation "transacts *more than half* of its business (as measured by various objective criteria) in California, *and* [] a majority of the voting securities are held by California residents," then it would qualify as a "so-called pseudoforeign" corporation. (*Greb v. Diamond Internat. Corp.* (2013) 56 Cal.4th 243, 251, italics added.) Corporations Code section 2115 requires that such a corporation "abide by numerous specified statutes . . . that govern corporate 'internal affairs' and would not otherwise apply to foreign entities." (*Ibid.*) Such a "pseudoforeign" corporation might have a good claim to whatever forum benefits would be afforded to a similarly situated domestic corporation.

But none of the foregoing, bearing upon the *actual significance* of plaintiff's ties to this state, was argued by plaintiff in the earlier appeal or addressed in our opinion. Instead, we simply rejected (or perhaps merely cast doubt on) plaintiff's conclusory assertion of "residency" as a basis for claiming an entitlement to deference in its choice of forum. As a practical matter, all that means is we determined plaintiff had *failed to offer sufficient evidence* demonstrating its relationship to California was so significant – whether referred to as "residency" or some corporate equivalent – that it's choice of California as a forum should be accorded significant deference in balancing the relative interests of the parties and the forums. That essentially *factual* determination, involving the assessment of evidence relating to *this particular plaintiff*, could never be characterized as a bare "principle[] of law" to which the law of the case doctrine would apply. (*People v. Barragan, supra*, 32 Cal.4th at p. 246, italics omitted.) Consequently,

19

the trial court erred by concluding, in response to defendants' "renewed" motion, that it did.

Further, having erroneously concluded that plaintiff's nonresident status qualified as law of the case, the trial court then compounded its error by also refusing to consider whether the additional evidence offered by plaintiff to demonstrate its significant ties to California might bear on the analysis of whether this state still has an interest in retaining jurisdiction over this case. The court simply declared that because law of the case applied, the additional evidence offered by plaintiff was automatically rendered irrelevant.

But because law of the case applies only to legal principles, it does not prevent a party from offering additional *evidence* when an issue is reconsidered in the trial court following remand from the appellate court – even where the appellate court has reversed a trial court's earlier decision based on the insufficiency of the evidence. "[W]here the appellate court reverses based on 'the "sufficiency of the evidence," the rule of the law of the case may not be extended to be an estoppel,'" and a party remains free to "'present additional evidence at a retrial . . . to' overcome the appellate court's determination that the evidence at the first trial was legally insufficient." (*People v. Barragan, supra*, 32 Cal.4th at pp. 246-247.) Thus, before deciding whether the changed circumstances relied upon by defendants in their renewed motions warranted an outright dismissal of this case, the trial court was obligated to consider whatever relevant evidence plaintiff offered in opposition to that request – including evidence that plaintiff maintains a significant relationship with this state, such that California would continue to have an interest in ensuring it has a proper forum in which to litigate its claims.

*4. The Trial Court Abused its Discretion in Ordering the Case Dismissed*

As we have already explained, the trial court's discretion to grant a motion based on forum non conveniens is wider when it merely imposes a stay of the case before

20

it, rather than dismissing it outright. (*Century Indemnity Co. v Bank of America, supra*, 58 Cal.App.4th at p. 411.) In particular, the court can exercise more flexibility in assessing whether the proposed alternate forum is suitable – such as through reliance on the defendants' promises of future conduct in that other forum, or on its own expectations as to how the case is likely to proceed – if it retains the option of resuming its own proceedings in the event circumstances in the alternate forum do not develop as expected.

That is what happened initially in this case. And in our opinion affirming the trial court's original determination that Hawaii was a suitable alternative forum, we specifically relied on the promises made by defendants *in this forum* about how they would conduct themselves in connection with *future* proceedings in Hawaii, as well as on the fact that our trial court would retain the option of resuming proceedings in this case if our understanding of Hawaii law proved incorrect. Thus, the court's original decision to stay, rather than dismiss, this case played a significant role in our opinion.

And contrary to defendants' (and the trial court's) apparent belief, nothing in our earlier opinion did anything to *resolve* the uncertainties inherent in that suitability analysis. Thus, the court's subsequent decision to dismiss the case, rather than maintain the stay, cannot have been based on our decision. Dismissal might have been justified if subsequent proceedings in Hawaii demonstrated that our expectations of the Hawaii forum had been *fulfilled*, or that they were somehow rendered moot. But defendants proved neither of those things. Indeed, their renewed motion offered the court no information at all about the status of proceedings in Hawaii. And when plaintiff sought to inform the court of those proceedings, and of its pending challenge to an administrative adjudication that its claims had already been barred by Hawaii's statutes of limitations, the court was unmoved, explaining that plaintiff's "dissatisf[action] with the procedures, outcomes and current status [in Hawaii] is not relevant. He is having his day in court . . . ." That assessment is simply inconsistent with our earlier opinion, which made clear that in the event Hawaii applied its statutes of limitations in a manner

21

materially inconsistent with our expectations, plaintiff might still have the option of returning to this forum. In other words, how Hawaii handles this case is potentially relevant in reassessing its suitability as an alternative forum.

That being said, however, we certainly do not mean to imply any determination that the proceedings in Hawaii thus far have provided cause for concern. That issue is not before us, and we make no such determination.

The other reasons cited by the trial court for dismissing the case are no more persuasive. As we have already explained, our earlier rejection of plaintiff's residency claim had no lingering significance, and the court erred when it refused to even *consider* plaintiff's proffered evidence intended to demonstrate its strong relationship with California. And we presume the trial court's statement that "[t]he Defendants have long ago taken care of the contingencies that lead [*sic*] to the Court's entering a stay vs. dismissal," refers to the fact defendants later elevated what had been only an *informal* promise to submit to jurisdiction in Hawaii when the trial court made its initial ruling, into a *formal stipulation*. However, as we have already stated, defendants' elevation of their informal promise into a formal stipulation would not support a decision to then dismiss the very case in which that stipulation is entered. If this case were dismissed, the significance of that formal stipulation would be seriously diminished, if not sacrificed completely.

And finally, the trial court's concern about "holding the California docket open for years to come, only to merely review what the [p]arties are doing in another state" does not provide any independent justification for dismissal. That is simply the nature of a stay.

22

DISPOSITION

The judgment dismissing this case is reversed.  Defendants' request for judicial notice is denied.  The case is remanded to the trial court with directions to reinstitute its prior stay.  Plaintiff is to recover its costs on appeal.


RYLAARSDAM, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| INVESTORS EQUITY LIFE HOLDING COMPANY,<br><br>    Plaintiff and Appellant,<br><br>      v.<br><br>JEFFREY P. SCHMIDT et al.,<br><br>    Defendants and Respondents. | G048284<br><br>(Super. Ct. No. 30-2009-00119128)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

        Plaintiff and Appellant Investors Equity Life Holding Company requested that our opinion filed on January 13, 2015, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED. The opinion is ordered published in the Official Reports.


                               RYLAARSDAM, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.