Filed 8/22/22  P. v. Lowe CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B311486 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA420534) |
| v. | |
| CURTIS LOWE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry A. Bork, Judge.  Reversed and remanded.

Pensanti & Associates and Louisa Belle Pensanti for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

In 2012, defendant and appellant Curtis Lowe (defendant) took part in a gang melee that resulted in the fatal stabbing of victim Patrick Lister (Lister). After trial, a jury found defendant guilty of second degree murder. Several years later, in 2019, defendant petitioned for resentencing under Penal Code section 1172.6 (former Penal Code section 1170.95).[1] The trial court appointed counsel for defendant and ultimately denied defendant's petition without issuing an order to show cause. We are asked to decide whether the court correctly concluded defendant was ineligible for relief as a matter of law because the record of conviction—primarily the opinion affirming his conviction on direct appeal (*People v. Lowe* (Apr. 19, 2016, B260127) [nonpub. opn.] (*Lowe I*))—establishes he was Lister's actual killer.

## I. BACKGROUND

### A. *The Murder*

John Armstrong (Armstrong) and Sedric Scott (Scott) were members of the Swans criminal street gang. In May 2012, they approached Lister outside a market and asked where he was from. Lister did not respond and entered the market.

Armstrong and Scott followed Lister inside, and Scott tore a gold chain from Lister's neck. As Scott ran out of the market, Lister gave chase. Armstrong, Scott, and other members of the Swans gang then attacked Lister and defendant ran from across the street and joined in the group assaulting Lister. When the attack stopped, Lister's chest was covered in blood and he died

---

[1] Undesignated statutory references that follow are to the Penal Code.

days later from a six-inch-deep stab wound that pierced his heart. (*Lowe I*, *supra*, B260127.)

The market's surveillance camera, which captured portions of the attack, showed defendant walk toward the market from the direction of the fight, move something from his left hand to his right hand, and put it in his pocket. Later, the video showed defendant open his right palm and look down at it. (*Lowe I*, *supra*, B260127.) Another Swans gang member, Mitchell Johnson (Johnson), was interviewed by police after the murder. Johnson claimed defendant stabbed Lister, but conceded he had not seen the actual act of stabbing himself. Johnson did say defendant showed him a five-plus-inch knife on the day of the murder. (*Lowe I*, *supra*, B260127.)

### B. The Charges and Trial

In April 2014, defendant, Nathaniel Willard (Willard), Scott, and Armstrong were charged with Lister's murder. The information alleged the murder was committed while the defendants were engaged in the commission of a robbery and was committed for the benefit of, at the direction of, and in association with a criminal street gang.

During trial, the trial court granted Willard's request for dismissal of the case against him. The court then granted the prosecution's motion to call Willard as a witness. While testifying, Willard denied making recorded statements to a confidential informant. The court then granted the prosecution's request to admit the recorded conversation in evidence. During the conversation, Willard stated he saw the fight between Scott and Lister and Willard identified defendant as the person who stabbed Lister. (*Lowe I*, *supra*, B260127.)

3

During the defense case, defendant testified he had not been involved with the Swans since 1990.  He denied knowing Lister, Willard, Scott, or Armstrong; denied fighting with Lister or seeing the fight; and denied killing Lister.  Defendant testified the item that could be seen in his hand in the surveillance video footage was his cell phone.  (*Lowe I*, *supra*, B260127.)

The jury was instructed that defendant and his accomplices were being prosecuted under three theories: (1) malice murder, (2) felony murder, and (3) murder pursuant to the natural and probable consequences doctrine.  The natural and probable consequences instruction enumerated the facts the prosecution had to prove in order to "prove that the defendant is guilty of murder under a theory of aiding and abetting . . . ."  The felony murder instruction advised the jury that if it found him "guilty of murder under a felony murder theory, he is guilty of murder in the first degree."  During its deliberations, the jury submitted a question asking, "for 403, Natural and Probable Consequences, No. 2, does 'during the commission of battery or assault' mean that the defendant has to be doing the act while the crime of murder is occurring?"

The jury ultimately convicted defendant of second degree murder.  The jury found true an allegation that the murder was committed for the benefit of, at the direction of, or in association with a street gang, but the jury found not true an allegation that the murder occurred during the commission of a robbery.  The trial court sentenced defendant to 15 years to life in prison.

C.    *Defendant's Direct Appeal*
On appeal from the judgment of conviction, defendant presented seven assignments of error.  As pertinent for our

4

purposes, a prior panel of this court held "[t]he trial court did not err by failing to sua sponte instruct on involuntary manslaughter under the natural and probable consequences theory, because there was no substantial evidence to support the offense." (*Lowe I*, *supra*, B260127.) In so holding, this court also characterized the evidence presented at trial and the theories upon which the parties relied, stating, for instance, that "neither party relied on, or presented evidence in support of, the natural and probable consequences theory as applied to [defendant]." (*Lowe I*, *supra*, B260127.) The opinion also states, when discussing other arguments presented for decision, that defendant "fatally stabbed Lister" and "inflicted the fatal stab wound." (*Lowe I*, *supra*, B260127.)

### D.    The 1172.6 Petition and Proceedings

In February 2019, defendant filed a form petition for resentencing under section 1172.6. Defendant checked the pertinent boxes to assert (1) a complaint or information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) defendant was convicted of first or second degree murder pursuant to one of those theories at trial, and (3) defendant could not now be convicted of first or second degree murder because of changes to sections 188 and 189. Defendant also requested appointment of counsel.

The People opposed the petition. The People argued defendant does not qualify for resentencing under section 1172.6 because he was convicted of second degree murder based on his act of killing by an intentional act with the intent to kill, and thus he could still be convicted of murder under current law.

The trial court appointed counsel for defendant, held a hearing without first issuing an order to show cause pursuant to section 1172.6, subdivision (c), and found defendant ineligible for relief. In the trial court's view, defendant was ineligible for relief as a matter of law because the record of conviction—*Lowe I* in particular—established he was Lister's actual killer. The court believed the jury did not rely on the natural and probable consequences doctrine to find defendant guilty because the People at trial argued defendant was the actual killer and neither side relied on, or presented evidence in support of, the natural and probable consequences theory as applied to defendant. As for felony murder, the court reasoned the jury must not have relied on that theory of liability either because it could only have resulted in a conviction for murder in the first degree, and defendant was convicted of murder in the second degree.

## II. DISCUSSION

The record of conviction does not demonstrate defendant is ineligible for relief *as a matter of law*. There are statements in *Lowe I* indicating defendant was the person who stabbed Lister, but those were made in a different procedural context, one in which a Court of Appeal generally views the evidence in the light most favorable to the criminal judgment. (*People v. Flinner* (2020) 10 Cal.5th 686, 748; *People v. Coleman* (2007) 146 Cal.App.4th 1363, 1366.) There are also statements regarding theories of guilt pursued at trial, but those are not part of the opinion's holding. Thus, put in terms of the argument made by the Attorney General, denial of defendant's section 1172.6 petition is not required by law of the case principles. Instead, an order to show cause must issue at which time defendant will not

6

be bound by the record of conviction and can submit new evidence, if he is able to muster any, that bears on his eligibility for relief.  (§ 1172.6, subd. (d)(3).)  It may turn out that the record at a section 1172.6, subdivision (d) hearing looks much the same as it does now (in which case denial of the petition may again be warranted), but the trial court's order denying defendant's petition at the prima facie consideration stage was procedurally premature.

### A.    *Section 1172.6*

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'  (Stats. 2018, ch. 1015, § 1, subd. (f).)  In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added [former] section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief.  [Citation.]"  (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

In determining whether a petitioner may be entitled to relief under the statute, a trial court's inquiry is appropriately informed by the record of conviction, which aids in distinguishing "petitions with potential merit from those that are clearly meritless."  (*Lewis*, *supra*, 11 Cal.5th at 971.)  "If the petitioner makes a prima facie showing that the petitioner is entitled to

relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).)

As recently explained by our Supreme Court in *Lewis, supra*, 11 Cal.5th 952, the prima facie inquiry under section 1172.6 is analogous to the inquiry undertaken in habeas corpus proceedings: a ""court takes [a] petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."" (*Id.* at 971; see also *id.* at 972 ["[T]he 'prima facie bar was intentionally and correctly set very low'"].)

Lewis recognized that appellate opinions "are generally considered to be part of the record of conviction . . . . [but] the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers.'" (*Lewis, supra*, 11 Cal.5th at 972.) Recent amendments to section 1172.6, which took effect January 1, 2022, further specify that a trial court "may . . . consider the procedural history of the case recited in any prior appellate opinion" at a "hearing to determine whether the petitioner is entitled to relief" that is held after issuance of an order to show cause. (§ 1172.6, subd. (d)(3); see also § 1172.6, subds. (c), (d)(1).)

B. *Defendant Stated a Prima Facie Case Requiring Issuance of an Order to Show Cause*

Defendant contends the trial court erred by failing to find he made a prima facie showing of entitlement to relief under section 1172.6. This is a question of law we review de novo. (*Lewis, supra*, 11 Cal.5th at 961.)

Defendant filed a petition that makes the required averments under section 1172.6, subdivision (a). The record supports defendant's representation that the information filed against him allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. The record also reflects defendant's trial jury was instructed on both the felony murder rule and natural and probable consequences doctrine. To be sure, the jury's decision to convict defendant of second degree murder, not first degree murder, establishes it did not convict him under a felony murder theory. But nothing in the record of conviction establishes as a matter of law that defendant was not convicted of murder under the natural and probable consequences doctrine.[2] As a result, the trial court erred in finding defendant failed to make a prima facie case for relief.

The Attorney General protests, however, that *Lowe I* establishes defendant's murder conviction was necessarily based on a malice theory of murder (not natural and probable consequences aiding and abetting) such that defendant *is* ineligible for relief as a matter of law. The Attorney General points to the opinion's holding that the court in defendant's jury trial did not err by declining to give (sua sponte) a lesser included offense instruction on involuntary manslaughter under the natural and probable consequences doctrine, the opinion's statement that "neither party relied on, or presented evidence in support of, the natural and probable consequences theory as

---

[2] Indeed, the question asked by the jury during deliberations indicates it was actively considering the applicability of the natural and probable consequences doctrine.

9

applied to" defendant, and the opinion's summary of the pertinent background facts. The Attorney General believes these features of the opinion are law of the case that preclude any possibility of section 1172.6 relief for defendant.

That stretches the law of the case doctrine too far. Under that doctrine, "a principle or rule that a reviewing court states in an opinion and that is necessary to the reviewing court's decision must be applied throughout all later proceedings in the same case, both in the trial court and on a later appeal." (*People v. Jurado* (2006) 38 Cal.4th 72, 94.) The doctrine, however, does not apply to dicta. (*Anne H. v. Michael B.* (2016) 1 Cal.App.5th 488, 499 ["'The discussion or determination of a point not necessary to the disposition of a question that is decisive of the appeal is generally regarded as obiter dictum and not as the law of the case'"].) Rather, "it 'applie[s] only to *the principles of law* laid down by the court as applicable to a retrial of fact,' and 'does not embrace the facts themselves . . . .' [Citation.]" (*People v. Barragan* (2004) 32 Cal.4th 236, 246; see also *Investors Equity Life Holding Co. v. Schmidt* (2015) 233 Cal.App.4th 1363, 1377 ["'As its name suggests, the [law of the case] doctrine applies only to an appellate court's decision on a question of law; it does not apply to questions of fact"].)

Contrary to the Attorney General's characterization, the statements in *Lowe I* regarding the evidence and theories presented at trial did not constitute a principle of law or a holding. The question before this court in *Lowe I* was whether substantial evidence required giving a lesser included instruction on involuntary manslaughter under the natural and probable consequences doctrine. The court was not presented with the question of whether defendant's conviction was based on a theory

10

of malice or whether there was substantial evidence to support a conviction for murder under a natural and probable consequences theory. Any statements the court made that might bear on an answer to these latter, unasked questions were not necessary to resolving the question actually presented and are accordingly nonbinding. Furthermore, the analysis in *Lowe I* was necessarily limited to the then-existing appellate record in a way that the question of defendant's entitlement to section 1172.6 relief is not; section 1172.6, subdivision (d)(3) permits defendant and the People to offer "new or additional evidence to meet their respective burdens" under the statute.

Much the same can be said of the instances in which *Lowe I* characterized defendant as Lister's actual killer. Those statements were made in the context of reviewing a trial court ruling for abuse of discretion and a jury finding for substantial evidence; they were, perforce, made when viewing the evidence in the light most favorable to those decisions based on the then-existing record. (*People v. Edwards* (2013) 57 Cal.4th 658, 711, 715.) *Lowe I* therefore does not at this stage compel a conclusion that the jury necessarily convicted defendant under a malice murder theory rather than under the natural and probable consequences doctrine.[3]

---

[3] In his respondent's brief, the Attorney General also relied on a Fourth District Court of Appeal decision that concluded holdings in a prior appellate opinion were law of the case that established the defendant there was ineligible for relief as a matter of law. The Fourth District Court of Appeal, however, later granted rehearing in the case and disavowed its earlier law of the case analysis. (*People v. Harden* (2022) 81 Cal.App.5th 45,

DISPOSITION

The order denying defendant's section 1172.6 petition is reversed and the cause is remanded with directions to issue an order to show cause under section 1172.6, subdivision (c) and to thereafter proceed as required by section 1172.6, subdivision (d).


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


MOOR, J.

---

50.)  Here, for the reasons we have already given, *Lowe I* does not establish defendant is ineligible for relief *as a matter of law*.