Filed 12/15/21  P. v. Marron CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE, | B305484 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA028151) |
| v. |  |
| GEORGE MARRON et al., |  |
| Defendants and Appellants. |  |
| In re GEORGE MARRON, | B314535 |
| On Habeas Corpus. |  |

APPEAL from orders of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Reversed and remanded with directions.

PETITION for writ of habeas corpus granted as to issuance of order to show cause.

John Steinberg, under appointment by the Court of Appeal, for Defendant, Appellant, and Petitioner George Marron.

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant Raymond Vallejo.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

In 2004, appellants George Marron and Raymond Vallejo joined fellow gang member Jose Jesus Medina in assaulting Ernie Barba, shortly before Medina fired a gun at Barba and his friend, killing Barba. Marron and Vallejo were convicted under the natural and probable consequences doctrine of one count of first degree murder and one count of attempted murder. On their direct appeals, we initially reversed their convictions for insufficient evidence. (*People v. Medina* (July 23, 2007, B189049) [nonpub. opn.] 2007 Cal.App.LEXIS 1206, *615-*616 (*Medina I*), review granted Oct. 31, 2007, and cause transferred Nov. 19, 2009, S155823.) Our Supreme Court reversed, holding the evidence was sufficient to support the convictions under the

2

natural and probable consequences doctrine, as the jury reasonably could have found the shooting was a natural and probable consequence of the preceding assault. (*People v. Medina* (2009) 46 Cal.4th 913, 916 (*Medina II*).) On transfer, we rejected Marron and Vallejo's remaining contentions and affirmed their convictions. (*People v. Medina* (Jan. 26, 2010, B189049) 2010 Cal.App.Unpub. LEXIS 572, *2-*3 (*Medina III*).)

After our Supreme Court held in *People v. Chiu* (2014) 59 Cal.4th 155, 167 (*Chiu*) that "a defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine," Vallejo filed a petition for a writ of habeas corpus to reduce his murder conviction from first to second degree. We issued an order for the Secretary of the California Department of Corrections and Rehabilitation to show cause why the People should not be required either to retry Vallejo or accept the requested reduction. The People opted to forego retrial, and the trial court reduced Vallejo's murder conviction from first to second degree. Years later (during the pendency of this appeal), Marron similarly filed a habeas petition seeking reduction of his murder conviction from first to second degree under *Chiu*. We deferred consideration of Marron's habeas petition pending consideration of this appeal.

In 2019, Marron and Vallejo filed petitions to vacate their murder and attempted murder convictions under newly enacted Penal Code section 1170.95 (Section 1170.95), alleging the convictions were invalid in the wake of the

3

limitations on murder liability enacted by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437).  The trial court issued an order to show cause, held an evidentiary hearing, and denied the petitions.  Without discussing the evidence or making any specific finding of fact, the court concluded:  (1) Marron and Vallejo were ineligible for relief from their murder convictions because the prosecution had proved beyond a reasonable doubt that they "could have been" convicted under a direct aiding and abetting theory; and (2) Section 1170.95 did not apply to attempted murder.

On appeal from the denial of their petitions, Marron and Vallejo contend the trial court erred by:  (1) applying a standard of proof akin to the substantial evidence standard of appellate review; (2) finding substantial evidence of their guilt under a still-valid theory of murder; (3) failing to bar the prosecution from relying on a still-valid theory under principles of issue preclusion, law of the case, or double jeopardy; and (4) concluding Section 1170.95 did not apply to attempted murder.  The Attorney General agrees the court applied a substantial evidence standard, but argues this was proper, and disputes Marron and Vallejo's other contentions.  After the completion of briefing, the Governor approved Senate Bill No. 775 (2021-2022 Reg. Sess.) (SB 775), effective January 1, 2022.  (See Cal. Const., art. IV, § 8, subd. (c)(2).)  SB 775 amends Section 1170.95 to reject a substantial evidence standard, and to provide relief for those convicted of attempted murder under the natural and probable consequences doctrine.

4

We agree with the parties that the court applied a substantial evidence standard, and agree with Marron and Vallejo that this was error. However, we decline to resolve Marron and Vallejo's claim that there was no substantial evidence of their guilt under a still-valid theory of murder, as Section 1170.95 contemplates that the evidence will be evaluated in the first instance by the trial court, and the prosecution may offer new or additional evidence on remand. Further, we disagree with Marron and Vallejo's contentions that principles of issue preclusion, law of the case, or double jeopardy bar the prosecution from relying on a still-valid theory of murder. Accordingly, we remand the matter to the trial court with directions to hold a new evidentiary hearing. We additionally direct the court to reconsider, after SB 775's effective date of January 1, 2022, whether Marron and Vallejo are eligible for relief from their attempted murder convictions.

Finally, in response to Marron's habeas petition, we order the Secretary of the California Department of Corrections and Rehabilitation to show cause before the trial court, when the matter is placed on calendar, why the People should not be required either to retry Marron on the first degree murder charge or accept a reduction of his murder conviction from first to second degree, in accordance with *Chiu*, *supra*, 59 Cal.4th 155. We direct the trial court to set a schedule for the written return to the order to show cause, a reply, and a hearing.

# BACKGROUND

## A. Trial

### 1. The Gang Inquiries

In 2004, Marron, Vallejo, and codefendant Medina -- all self-described members of the Lil Watts gang -- attended a party at the Lake Los Angeles home of Manuel Ordenes. (*Medina II*, *supra*, 46 Cal.4th at 916.) Ordenes was a former member of a rival gang, although the two gangs were not rivals in the Lake Los Angeles area. (*Ibid.*) That evening, Ernie Barba drove to Ordenes's house with his friend Krystal Varela, who stayed by the car while Barba went to the house. (*Ibid.*) When the door was opened for Barba, Ordenes heard Vallejo ask Barba, "Where are you from?" (*Ibid.*) Wanting to avoid problems in his house, and concerned that somebody was going to get killed, Ordenes ordered the men to go outside. (*Id.* at 917.) Marron, Vallejo, and Medina left the house, approached Barba, and continued to ask, "Where are you from?" (*Ibid.*)

Ordenes and the prosecution's gang expert, Hawthorne Police Officer Christopher Port, testified that when a gang member asks another person "where are you from?" he suspects that person is a gang member and wants to know what gang he claims as his. (*Medina II*, *supra*, 46 Cal.4th at 916-918.) Officer Port opined that a gang member who asks that question probably would be prepared to use violence, ranging from a fistfight to homicide. (*Ibid.*) Ordenes

similarly opined that if the gang members were enemies, the question could lead to a fight or even death.[1]  (*Id*. at 917.)

### *2. The Assault*

In response to Marron, Vallejo, and Medina's asking where he was from, Barba replied, "Sanfer," referring to his former gang.  (*Medina II*, *supra*, 46 Cal.4th at 917.)  Vallejo responded, "Lil Watts."  (*Ibid*.)  Medina remarked, "What fool, you think you crazy?"  (*Ibid*.)  Vallejo then punched Barba.  (*Ibid*.)  Medina and Marron joined in the fight. (*Ibid*.)

Officer Port opined that Barba's response of "Sanfer" was a claim of membership in that gang, and that Marron, Vallejo, and Medina had viewed Barba's response as disrespectful and had started a fight to avenge themselves. (*Medina II*, *supra*, 46 Cal.4th at 918.)  He stated, "When gangs have a disagreement, you can almost guarantee it's

---

[1]    According to the dissenting justices in *Medina II*, "[a]n examination of the reporter's transcript belies the majority's characterization" of the evidence "regarding the consequences of the challenge, 'Where are you from?'"  (*Medina II*, *supra*, 46 Cal.4th at 930-931 (dis. opn. of Moreno, J.).)  Although we state the facts as described by the majority opinion, the trial court may independently evaluate the reporter's transcript on remand.  We note that an appellate court's statements of fact are not law of the case.  (See *Investors Equity Life Holding Co. v. Schmidt* (2015) 233 Cal.App.4th 1363, 1377-1378; *People v. Harris* (2021) 60 Cal.App.5th 939, 959 & fn.4, review granted Apr. 28, 2021, S267802.)

7

going to result in some form of violence, whether that be punching and kicking or ultimately having somebody shot and killed." (*Ibid.*)

### 3. The Shooting

Even though outnumbered in the fight, Barba defended himself well and held his own against Marron, Vallejo, and Medina. (*Medina II*, *supra*, 46 Cal.4th at 917.) Eventually, Ordenes was able to pull Barba away and escort him to his car, which was parked in front of the house. (*Ibid.*) Barba sat in the driver's seat, while Varela (his friend who had arrived with him) sat in the passenger seat. (*Ibid.*)

Varela heard someone in the yard say, "get the heat," which she understood to refer to a gun. (*Medina II*, *supra*, 46 Cal.4th at 917.) Barba began to drive off. (*Ibid.*) Medina walked into the middle of the street and repeatedly fired a gun at Barba's car as it drove away, killing Barba (Varela was not hit). (*Ibid.*) Marron and Vallejo fled with Medina before the police arrived. (*Id.* at 924.)

### 4. The Convictions

At Marron, Vallejo, and Medina's trial, the jury was instructed on a "direct" aiding and abetting theory and the natural and probable consequences doctrine.[2] With respect to Marron and Vallejo, the prosecutor stated they were "not

---

[2] At Marron's request, we have taken judicial notice of the record on his direct appeal.

8

legally the [direct] aiders and abettors of the murder," and relied only on the natural and probable consequences doctrine, arguing Medina's shooting at Barba and Varela was a natural and probable consequence of the preceding assault on Barba.

The jury convicted Marron and Vallejo of Barba's first degree murder and Varela's attempted murder, which the jury found to be willful, premeditated, and deliberate. (*Medina II*, *supra*, 46 Cal.4th at 917, 919.)  The jury also found true various enhancement allegations, including that the crimes were committed for the benefit of a gang.  (*Id.* at 919.)  Marron and Vallejo were sentenced to imprisonment for 50 years to life.

### B. Prior Appellate and Habeas Proceedings

As noted, on Marron's and Vallejo's direct appeals, we initially reversed their convictions, finding insufficient evidence of their guilt under the natural and probable consequences doctrine -- the only theory under which they had been tried.  (*Medina I*, *supra*, 2007 Cal.App.LEXIS 1206, at *615-*616.)  Our Supreme Court reversed, reinstating the convictions.  (*Medina II*, *supra*, 46 Cal.4th at 916.)  The court observed, "It is undisputed . . . that the jury convicted Marron and Vallejo of murder and attempted murder as aiders and abettors under the natural and probable consequences doctrine."  (*Id.* at 919-920.)  The majority disagreed with our assessment of the sufficiency of the evidence under that doctrine, holding the jury reasonably

9

could have found (and implicitly did find) that a person in Marron and Vallejo's position would have or should have known that Medina's shooting at Barba and Valera was a reasonably foreseeable consequence of the preceding assault on Barba. (*Id.* at 922-928.) On transfer, we rejected Marron and Vallejo's remaining contentions, and affirmed their convictions. (*Medina III*, *supra*, 2010 Cal.App.Unpub. LEXIS 572, at *2-*3.)

In 2015, Vallejo filed a petition for a writ of habeas corpus to reduce his murder conviction from first to second degree, in reliance on our Supreme Court's holding in *Chiu* that "a defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine." (*Chiu*, *supra*, 59 Cal.4th 155, 167.) We issued an order requiring the Secretary of the California Department of Corrections and Rehabilitation to show cause before the superior court why the People should not be required "either to retry petitioner on the first degree murder charge or accept a reduction of the conviction to second degree murder, in accordance with [*Chiu*]." After the People opted to forego retrial, the trial court reduced Vallejo's murder conviction from first to second degree, and resentenced him.

### C. The Instant Petitions

In January 2019, Marron and Vallejo separately filed petitions for resentencing under Section 1170.95, alleging they could not be convicted of murder or attempted murder

10

in the wake of SB 1437's elimination of murder liability under the natural and probable consequences doctrine. At their request, the court appointed counsel for each of them. In a joint opposition to both petitions, the prosecution argued that despite SB 1437's changes to the law, Marron and Vallejo still could be convicted under a direct aiding and abetting theory, or under an implied-malice theory. After receiving reply briefs, the court issued orders for the prosecution to show cause why the petitions should not be granted.

In March 2020, the court held an evidentiary hearing. No party offered new or additional evidence. At the outset of the hearing, the court announced it would deny the petitions with respect to the convictions for attempted murder, as several appellate decisions had held Section 1170.95 did not apply to attempted murder.

The prosecutor asserted that appellants could be convicted of murder under a direct aiding and abetting theory, or under an implied-malice theory. He argued that because the prior appellate opinions had not addressed these theories, the opinions should not constrain the court's view of the evidence. The prosecutor did not, however, discuss any evidence of Marron's or Vallejo's guilt under either theory.

Vallejo's counsel argued he was entitled to relief in light of our and our Supreme Court's observations on direct appeal that his murder conviction was based on the natural and probable consequences doctrine. Counsel acknowledged

that the jury also had been instructed on a theory of direct aiding and abetting, but argued that where a jury is instructed on both valid and invalid theories, "you do not have the opportunity or the right to reevaluate what the jury's findings w[ere] based upon . . . ." Marron's counsel similarly relied on the appellate opinions' observations that the convictions were based on the natural and probable consequences doctrine, arguing the opinions implied the convictions' invalidity under any other theory. In rebuttal, the prosecutor argued that because the jury had found the attempted murders to be willful, premeditated, and deliberate, the jury "could very well have" found that Vallejo and Marron intended to aid and abet the murder. Again, the prosecutor failed to discuss any evidence that might have supported such a finding.

The court denied the petitions in an oral ruling. The court observed that Vallejo's argument concerning the effect of instructions on valid and invalid theories was based on a standard applicable only on direct appeal, not on a petition under Section 1170.95. The court further observed that in *Medina II*, our Supreme Court had neither addressed nor "dispensed with" a direct aiding and abetting theory as a possible alternative basis for Marron's and Vallejo's convictions, as the court had not needed to consider any theory other than the one on which it found the evidence sufficient -- that of the natural and probable consequences doctrine. Without referring to specific facts or evidence, the court concluded, "Looking at this, I am convinced beyond a

12

reasonable doubt, based upon the fact[s] I have before me, that the defendants clearly could have been convicted on a direct aiding and abetting theory with actual malice. [¶] The 1170.[9]5 petition[s] as to each defendant are denied."

Marron and Vallejo timely appealed. During the pendency of his appeal, Marron filed a habeas petition seeking reduction of his murder conviction from first to second degree under *Chiu*, *supra*, 59 Cal.4th 155.

## DISCUSSION

### A. Section 1170.95

#### 1. *Principles*

Section 1170.95 permits a defendant who was convicted of murder under the natural and probable consequences doctrine to petition the sentencing court to have the conviction vacated and to be resentenced on any remaining counts "when [specified] conditions apply." (Pen. Code, § 1170.95, subd. (a).) One such condition is that the petitioner could not be convicted of murder after SB 1437's changes to the law (including its elimination of murder liability under the natural and probable consequences doctrine). (See *id.*, § 1170.95, subd. (a)(3).) Where, as here, the trial court finds the petitioner has made a prima facie showing of eligibility for relief, and the parties do not stipulate to relief after issuance of an order to show cause, the court must hold an evidentiary hearing. (*Id.*, § 1170.95, subds. (c)-(d).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on

13

the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Id.*, § 1170.95, subd. (d)(3).) "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*) If the prosecution fails to carry its burden, the court must vacate the murder conviction and resentence the petitioner on any remaining counts, "provided that the new sentence, if any, is not greater than the initial sentence." (*Id.*, § 1170.95, subds. (d)(1), (3).)

In determining whether the prosecution has proved the petitioner could be convicted under a theory of murder that is still valid after SB 1437, the trial court must independently find the petitioner guilty under such a theory beyond a reasonable doubt. (See *People v. Fortman* (2021) 64 Cal.App.5th 217, 225, review granted July 21, 2021, S269228 ["the People must convince the trial court, *as an independent trier of fact*, that the petitioner is guilty of murder on a still-valid theory beyond a reasonable doubt"]; accord, *People v. Clements* (2021) 60 Cal.App.5th 597, 615, review granted Apr. 28, 2021, S267624; *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 243-244, review granted Mar. 10, 2021, S266652; *People v. Lopez* (2020) 56 Cal.App.5th 936, 952 (*Lopez*), review granted Feb. 10, 2021, S265974; *People v. Duchine* (2021) 60 Cal.App.5th 798, 815.) We disagree with the contrary holding in *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, and cause transferred Nov. 23, 2021, S265309, which endorsed a

14

substantial evidence standard.  We note that the Legislature rejected the substantial evidence standard in enacting SB 775, by amending subdivision (d)(3) of Section 1170.95 to include the following language:  "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by [SB 1437] . . . .  A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  (Stats. 2021, ch. 551, § 2.)

### 2. *Analysis*

The parties agree, as do we, that the trial court applied a substantial evidence standard at the March 2020 evidentiary hearing.  The court did not discuss the evidence or make specific findings of fact.  Although the court stated that Marron and Vallejo "could have been" convicted under a direct aiding and abetting theory, as Vallejo observes, this language was consistent with an inquiry into "the possibility that a different fact-finder theoretically could find certain facts to be proved."  Neither the court's minute orders nor its oral ruling indicated that the court independently found Marron and Vallejo guilty under a still-valid theory beyond a reasonable doubt, as subsequent cases -- followed by SB 775 -- clarified was required.  (See, e.g., *Lopez, supra*, 56 Cal.App.5th at 949, rev.gr. [noting in October 2020 the *Duke* court was the "only . . . other court [to have] weighed in on

15

the nature of the required showing of ineligibility at the hearing stage," and disagreeing with its endorsement of the substantial evidence standard].)  Because the court applied an incorrect standard of proof, we will remand for a new evidentiary hearing.

We decline to resolve Marron and Vallejo's claim that there was no substantial evidence of their guilt under a still-valid theory.  As a preliminary consideration, Marron raises this claim only in his reply brief, and Vallejo raises it only as an alternative to his claim regarding the standard of proof, with which we have agreed.  More important, Section 1170.95 contemplates that the evidence will be evaluated in the first instance by the trial court.  (See *People v. Clements*, *supra*, 60 Cal.App.5th at 603, rev.gr ["the trial judge sits as a fact finder at a hearing under section 1170.95, subdivision (d)"]; *id*. at 617 ["it is possible [for a trial judge] to review a trial transcript and reach an opinion about what actually happened. . . .  And if either party believes it's important to put on live testimony to allow the trial judge to make credibility determinations based on cues other than consistency and plausibility, the statute expressly allows them that opportunity"].)  As explained, the court did not evaluate the evidence as an independent factfinder.  We will be better positioned for substantial evidence review after it has done so.  Moreover, in attempting to prove Marron and Vallejo's guilt under a still-valid theory, the prosecution may offer new or additional evidence.  (See Pen. Code, § 1170.95, subd. (d)(3); *People v. Gentile* (2020) 10 Cal.5th 830, 856

16

["the Legislature authorized the parties to offer new or additional evidence during the section 1170.95 process in order to allow the parties to explore issues they did not explore under the prior state of the law. The statute contemplates that such evidence may inform whether a conviction remains valid despite the ameliorative provisions of Senate Bill 1437"].) Although the prosecution did not offer such evidence at the original evidentiary hearing, Marron and Vallejo identify nothing barring it from doing so at the new evidentiary hearing, with the benefit of our and SB 775's clarifications of the standard of proof.[3]

Marron and Vallejo contend that because the prosecution undisputedly relied only on the natural and probable consequences doctrine in securing their convictions, and our Supreme Court confirmed on direct appeal that their convictions were based on that theory, principles of issue preclusion or law of the case bar the prosecution from arguing they could be convicted under another theory. We disagree. In the inquiry into a petitioner's entitlement to relief under Section 1170.95, the fact the petitioner was convicted under the natural and probable consequences

---

[3] Vallejo asserts "[n]o do over should be permitted because the cause has been heard and the trial judge entered his findings," purportedly including a finding of reasonable doubt whether Marron and Vallejo are guilty under a still-valid theory. But this assertion is inconsistent with Vallejo's contention, and our conclusion, that the trial court did not act as an independent factfinder.

17

doctrine is the starting point, not the end. (See Pen. Code, § 1170.95, subd. (a) ["A person convicted of . . . murder under a natural and probable consequences . . . theory" may file petition to have conviction vacated "when [specified] conditions apply," including condition that petitioner could not be convicted because of SB 1437].) As reflected in the parties' permission to present new or additional evidence, Section 1170.95 "allow[s] the parties to explore issues they did not explore [at trial] under the prior state of the law." (*People v. Gentile*, *supra*, 10 Cal.5th at 856; see also *People v. Rodriguez*, *supra*, 58 Cal.App.5th at 239, rev.gr. ["If the superior court's ineligibility ruling may be based on evidence not heard by the original trier of fact, the Legislature cannot have intended the court simply to evaluate the grounds on which the original verdict was reached"]; *People v. Hernandez* (2021) 60 Cal.App.5th 94, 109-110 [although prior appellate decision reduced petitioner's felony murder conviction from first to second degree to account for jury's failure to find it was in first degree, "whether that decision [wa]s law of the case" was irrelevant to issue whether prosecution could prove guilt under still-valid theory in Section 1170.95 proceedings].) Thus, notwithstanding the prosecution's failure to explore any theory other than the natural and probable consequences doctrine in securing Marron's and Vallejo's convictions, the prosecution may rely on a still-valid theory in opposing their petitions for relief under Section 1170.95. Such reliance will not require relitigation of any issue already decided by the jury, in

18

violation of the doctrine of issue preclusion, as no still-valid theory was "actually litigated and necessarily decided" at trial. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825.)

We are unpersuaded by Marron and Vallejo's reliance on cases applying, on direct appeal, "the governing rule *on appeal* . . . [that] when the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others legally incorrect, and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand." (*People v. Green* (1980) 27 Cal. 3d 1, 69, italics added; see also *People v. Chun* (2009) 45 Cal.4th 1172, 1203; *Chiu*, *supra*, 59 Cal.4th at 167.) These cases did not address the standards to be applied by a trial court in postconviction proceedings under Section 1170.95, a statute enacted after the cases were decided. We agree with our colleagues in Division Seven that the "backward looking" appellate standard applied in these cases does not govern a trial court's determination whether a petitioner is ineligible for relief under Section 1170.95 on the ground the petitioner is guilty under a still-valid theory. (*People v. Rodriguez, supra,* 58 Cal.App.5th at 239-240, rev.gr.)

Finally, we reject Vallejo's contention that because his murder conviction has been reduced from first to second degree, double jeopardy principles bar the prosecution from relying on a still-valid theory of *first* degree murder in opposing relief under Section 1170.95. As observed in the

19

case on which Vallejo relies, "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of *trial and possible conviction* more than once for an alleged offense." (*Green v. United States* (1957) 355 U.S. 184, 187, italics added.) In postconviction proceedings under Section 1170.95, "double jeopardy principles are not at stake because [the] defendant is voluntarily seeking to vacate [his or] her prior conviction, not subjecting [himself or] herself to a new trial or the possibility of increased punishment." (*People v. Myles* (2021) 69 Cal.App.5th 688, 704; accord, *People v. Hernandez, supra*, 60 Cal.App.5th at 111 ["The retroactive relief provided by section 1170.95 is a legislative 'act of lenity' . . . and does not result in a new trial or increased punishment that could implicate the Double Jeopardy Clause"].) Nothing in Section 1170.95 authorizes the trial court to impose a new conviction for first degree murder, to enhance the degree of Vallejo's existing conviction for second degree murder, or to enhance the sentence on that conviction. Indeed, the statute expressly prohibits enhancement of the sentence. (Pen. Code, § 1170.95, subd. (d)(1) [if court vacates conviction, it shall recall sentence and resentence petitioner as if petitioner had not previously been sentenced, "provided that the new sentence, if any, is not greater than the initial sentence"].) Thus, even if the court deems Vallejo ineligible for relief by finding him guilty under a still-valid theory of first degree murder, the court will merely deny his petition for relief, leaving in place his

20

conviction and sentence for second degree murder. Double jeopardy principles do not bar the prosecution from pursuing such a result. (See *People v. Myles, supra,* at 704; *People v. Hernandez, supra,* at 111.)

In sum, because the trial court applied an incorrect standard of proof in determining whether Marron and Vallejo could be convicted under a still-valid theory, and because they have identified nothing barring the prosecution from relying on such a theory on remand, we will remand to the trial court with directions to hold a new evidentiary hearing. By the time of the new hearing, Section 1170.95 will have been amended to apply to convictions for attempted murder under the natural and probable consequences doctrine. (Stats. 2021, ch. 551, § 2 [amending subdivision (a) of Section 1170.95 to read, in relevant part, "A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts"].) Accordingly, we will direct the court to reconsider, after SB 775's effective date of January 1, 2022, whether Marron and Vallejo are eligible for relief from their attempted murder convictions.

### B. Marron's Habeas Petition

Marron's habeas petition seeks reduction of his murder conviction from first to second degree, in reliance on our

Supreme Court's holding in *Chiu* that "a defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine." (*Chiu, supra,* 59 Cal.4th 155, 167.) As noted, Vallejo has already received such a reduction, and it is undisputed that Marron's murder conviction, like Vallejo's, was based on the natural and probable consequences doctrine. Accordingly, we order the Secretary of the California Department of Corrections and Rehabilitation to show cause before the trial court, when the matter is placed on calendar, why the People should not be required either to retry Marron on the first degree murder charge or accept a reduction of his murder conviction from first to second degree, in accordance with *Chiu*. We direct the trial court to set a schedule for the written return to the order to show cause, a reply, and a hearing. Our directions are without prejudice to the court's discretion to schedule proceedings on the order to show cause concurrently with proceedings on the Section 1170.95 petitions, or to defer proceedings on the order to show cause until after the court has decided whether to vacate Marron's murder conviction under Section 1170.95. (See Cal. Rules of Court, rule 4.551(h) ["On motion of any party or on the court's own motion, for good cause stated in the order, the court may . . . extend the time for doing any act under this rule"].)

## DISPOSITION

The orders denying Marron's and Vallejo's petitions for resentencing under Penal Code section 1170.95 are reversed. Marron's petition for a writ of habeas corpus is granted as to the issuance of an order to show cause. The Secretary of the California Department of Corrections and Rehabilitation is ordered to show cause before the trial court, when the matter is placed on calendar, why the People should not be required either to retry Marron on the first degree murder charge or accept a reduction of his murder conviction from first to second degree, in accordance with *Chiu*. The matter is remanded to the trial court with directions to: (1) hold a new evidentiary hearing, after SB 775's effective date of January 1, 2022, on Marron's and Vallejo's eligibility for relief under Section 1170.95 from their murder and attempted murder convictions; and (2) set a schedule for the written return to the order to show cause, a reply, and a hearing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.                                    COLLINS, J.

23