Filed 12/23/21  P. v. Nunez-Sharp CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B308390 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA397214) |
| v. | |
| DIEGO NUNEZ-SHARP, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Reversed and remanded with directions.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob A. Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Michael R. Johnsen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Appellant Diego Nunez-Sharp appeals from the denial of his petition for resentencing under Penal Code section 1170.95 (Section 1170.95).  In 2015, a jury convicted appellant and a codefendant of one count of first degree murder, and found true an allegation that the murder was committed in the commission of a robbery, requiring findings that appellant was at least a major participant in the robbery and acted with reckless indifference to human life within the meaning of Penal Code section 190.2, subdivision (d) (the special circumstance statute).  During the pendency of appellant's direct appeal, our Supreme Court clarified the meaning of the special circumstance statute in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).  After *Banks* and *Clark* were issued, we affirmed the judgment in an unpublished opinion. (*People v. Nunez-Sharp* (Mar. 15, 2017, B264843) 2017 Cal.App.Unpub. LEXIS 1787 (*Nunez-Sharp*).)  We held that the special circumstance finding was supported by substantial evidence that appellant was a major participant

2

in the robbery and acted with reckless indifference to human life under *Banks*. (*Id.* at *55-*58.)

After the enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), which narrowed the felony murder rule by requiring findings that the defendant was at least a major participant in the underlying felony and acted with reckless indifference to human life, appellant filed in the trial court a petition for resentencing under Section 1170.95 and a petition for a writ of habeas corpus. In his Section 1170.95 petition, he sought relief from his murder conviction on the ground that he could not be convicted after SB 1437's changes to the law. In his habeas petition, he sought relief from the jury's pre-*Banks* special circumstance finding on the ground of insufficient evidence under *Banks* and *Clark*. The trial court appointed counsel to represent him in the Section 1170.95 proceedings. Appellant filed a motion for substitution of counsel, but counsel never brought the motion to the court's attention, and the court did not address it.

The court denied appellant's Section 1170.95 petition without issuing an order to show cause. The court concluded that although relief was not precluded as a matter of law by the jury's pre-*Banks* special circumstance finding, relief *was* precluded by our prior opinion's holding that the jury's finding was supported by substantial evidence under *Banks*. As an alternative ground for summarily denying the petition, the court independently reviewed the trial evidence, concluding either that appellant was a major participant in

3

the robbery and acted with reckless indifference to human life under *Banks* and *Clark*, or that there was substantial evidence to support such findings. The court also summarily denied appellant's habeas petition, concluding his sufficiency-of-the-evidence claim was procedurally barred because we had rejected an identical claim on direct appeal, and further concluding the claim was meritless based on the court's independent finding of substantial evidence under *Banks* and *Clark*.

On appeal from the order denying his Section 1170.95 petition, appellant contends the court prejudicially erred by: (1) failing to consider his motion for substitution of counsel; and (2) denying his Section 1170.95 petition without issuing an order to show cause, in reliance on our prior opinion and the court's independent review of the trial evidence. The Attorney General disagrees, and contends that remand is futile because the court's denial of appellant's *Banks/Clark* claim on habeas review will preclude relief under Section 1170.95.

We conclude the trial court erred in denying appellant's Section 1170.95 petition without issuing an order to show cause. We agree with the trial court's conclusion that relief is not precluded as a matter of law by the jury's pre-*Banks* special circumstance finding. However, we disagree with the court's conclusion that relief is precluded by our prior opinion's analysis of the sufficiency of the evidence supporting the jury's finding. Our opinion held only that the jury reasonably could have found that

4

appellant engaged in conduct prohibited by the special circumstances statute as construed in *Banks*, not that the jury necessarily did so.  Thus, our opinion does not preclude a finding by the trial court after an evidentiary hearing -- at which appellant might offer new or additional evidence -- that the prosecution has failed to prove beyond a reasonable doubt that appellant was a major participant in the robbery and acted with reckless indifference to human life under *Banks* and *Clark*.  Because nothing in the record refuted appellant's allegations as a matter of law, the court was required at the prima facie stage to accept as true his allegations that he was not guilty under any still-valid theory of murder, and to issue an order to show cause.  We disagree with the Attorney General's contention that remand is futile.  Accordingly, we reverse the order denying appellant's petition for resentencing, and remand the matter to the trial court with directions to issue an order to show cause and proceed in accordance with Section 1170.95.  Mindful that appellant's statutory right to counsel will be constitutionally protected after issuance of the order to show cause (see *People v. Lewis* (2021) 11 Cal.5th 952, 973 (*Lewis*)), we additionally direct the court to consider the merits of appellant's motion for substitution of counsel.

# BACKGROUND

## A. *Underlying Judgment*

### 1. *Prosecution Case*

Appellant and his codefendant, Jonathan Lopez-Jaime, were jointly tried before separate juries on one count of murder (Pen. Code, § 187, subd. (a)), with a special circumstance allegation that the murder was committed during the commission of a robbery (*id.*, § 190.2, subd. (a)(17)). (*Nunez-Sharp, supra*, 2017 Cal.App.Unpub. LEXIS 1787, at *2.)

#### a. Investigation

On the evening of November 1, 2009, a neighbor of victim Nolberto Gutierrez heard voices outside Gutierrez's Hollywood apartment, followed 40 minutes later by what sounded like a body being thrust into Gutierrez's wall and some moaning, after which a radio in Gutierrez's apartment was left on for two days. (*Nunez-Sharp, supra*, 2017 Cal.App.Unpub. LEXIS 1787, at *2.) The neighbor's complaint about the radio prompted the discovery of Gutierrez's body, which was lying face-down on the floor of his apartment, naked and bearing his own sperm. (*Id.* at *2, *23.) A ligature (a pillowcase apparently taken from Gutierrez's bed) was knotted around Gutierrez's neck, and his hands were tied behind his back with the cord from an iron. (*Id.* at *2-*3.) An autopsy showed the cause of death was "[a]sphyxia due to ligature strangulation." (*Id.* at *3.)

Surveillance video from a liquor store near Gutierrez's apartment showed that on the evening of Gutierrez's death, Gutierrez visited the store with appellant and Lopez-Jaime. (*Nunez-Sharp, supra,* 2017 Cal.App.Unpub. LEXIS 1787, at *3-*4, *7-*8.) Gutierrez was wearing a necklace in the store, but neither the necklace nor any other jewelry was found in his apartment after his death. (*Id.* at *3.)

### b. Appellant's Interview

Detectives conducted a videotaped interview of appellant (in Spanish), which was played for his jury. (*Nunez-Sharp, supra,* 2017 Cal.App.Unpub. LEXIS 1787, at *4-*5.) Appellant admitted that on the evening of Gutierrez's death, he accompanied Lopez-Jaime and Gutierrez to Gutierrez's apartment, claiming he did so on the suggestion of Lopez-Jaime, who intended to have sex with Gutierrez. (*Id.* at *9.) After they arrived at the apartment, Lopez-Jaime said to appellant, "let's rob him." (*Ibid.*) Lopez-Jaime also told appellant that Gutierrez wanted to have sex with both of them in exchange for paying each of them $500. (*Ibid.*) Appellant joined Lopez-Jaime in taking off Gutierrez's clothes and starting to touch him. (See *ibid.*)

Lopez-Jaime gave appellant a signal to hit Gutierrez and rob him. (*Nunez-Sharp, supra,* 2017 Cal.App.Unpub. LEXIS 1787, at *9.) Lopez-Jaime hit Gutierrez, and told appellant to put Gutierrez's hands behind his back. (*Ibid.*) Appellant held Gutierrez from behind while Lopez-Jaime was hitting him. (*Id.* at *9-*10.) Appellant told the

7

detectives, "I hit him also." (*Id.* at *10.) Lopez-Jaime put a pillow on Gutierrez's face, but appellant objected, and either he or Lopez-Jaime removed the pillow. (*Id.* at *10-*12.) After Gutierrez fell to the ground, appellant tied Gutierrez's hands behind his back with the cord from an iron. (*Id.* at *11-*12.) Lopez-Jaime took Gutierrez's cell phone and some jewelry from the apartment, and continued hitting Gutierrez. (*Id.* at *11.) Appellant took a piece of chain jewelry. (*Id.* at *11.)

Appellant denied choking Gutierrez with a pillowcase and denied seeing Lopez-Jaime choking him. (*Nunez-Sharp*, *supra*, 2017 Cal.App.Unpub. LEXIS 1787, at *12-*13.) Appellant stated that when he left the apartment (shortly before Lopez-Jaime did), Gutierrez was alive. (*Id.* at *11.)

At the conclusion of his interview, pursuant to a detective's instructions, appellant made a recorded phone call to Lopez-Jaime. (*Nunez-Sharp*, *supra*, 2017 Cal.App.Unpub. LEXIS 1787, at *14.) A redacted version of the recording was played for appellant's jury. (*Ibid.*) Appellant told Jaime-Lopez he was worried the police were after him for the "thing we did with . . . that man from Hollywood" (Gutierrez) and asked whether Lopez-Jaime continued hitting Gutierrez after he was on the ground. (*Id.* at *14-*15.) Lopez-Jaime said no, and indicated he believed Gutierrez had not died because had he died, his death would have been reported in the news. (*Id.* at *15.) When appellant asked if Gutierrez died when Lopez-Jaime "put the

8

sheet on his neck," Lopez-Jaime replied, "No, he didn't die." (*Id.* at *15-*16.)

### 2. Defense Case

Through court-appointed Spanish interpreters, appellant testified to the following events on November 1, 2009. (*Nunez-Sharp*, *supra*, 2017 Cal.App.Unpub. LEXIS 1787, at *28, *32-*33, *48.) He accepted an offer from Gutierrez and Lopez-Jaime to dance and have sex at Gutierrez's apartment in exchange for $500. (*Id.* at *28.) While in Gutierrez's bathroom, he took a chain that was on top of the toilet. (*Ibid.*) When he came out of the bathroom, Gutierrez was nearly naked, and his hands were tied behind his back with a pillowcase. (*Id.* at *28-*29.) At Gutierrez's invitation, appellant began touching Gutierrez's chest and stomach. (*Id.* at *29.) After the pillowcase came off Gutierrez's wrists, Gutierrez asked appellant to put the pillowcase back on, and to tie his hands with the cord from an iron; appellant obliged by wrapping the pillowcase and cord around Gutierrez's hands, but did not tie a knot. (*Ibid.*)

Lopez-Jaime hit Gutierrez several times. (*Nunez-Sharp*, *supra*, 2017 Cal.App.Unpub. LEXIS 1787, at *29.) In appellant's view, it "didn't appear that [Gutierrez] was angry at that or he felt pain." (*Id.* at *30.) Appellant hit Lopez-Jaime, and Lopez-Jaime hit him back. (*Id.* at *29.) Appellant decided to leave because he was confused whether the hitting was "real" or a sexual activity. (*Ibid.*) When he left the apartment (at least 10 minutes before Lopez-Jaime

9

left), Gutierrez was on the floor, but he was alive and there was no ligature around his neck. (*Id.* at \*29-\*30.)

### 3. Verdicts

The jury was instructed on a felony murder theory, on which the prosecutor relied in closing argument. (*Nunez-Sharp, supra*, 2017 Cal.App.Unpub. LEXIS 1787, at \*36-\*38.) The prosecutor urged the jury to find true the robbery-murder special circumstance allegation on the basis of a finding either that appellant was the actual killer -- he tied the pillowcase around Gutierrez's neck -- or that appellant was a major participant in a robbery resulting in Gutierrez's death and acted with reckless indifference to human life. (*Id.* at \*39.) Appellant's counsel argued he neither robbed nor killed Gutierrez. (See *ibid.*)

The jury convicted appellant and Lopez-Jaime of first degree murder, and found true the robbery-murder special circumstance allegation. (*Nunez-Sharp, supra*, 2017 Cal.App.Unpub. LEXIS 1787, at \*44.) Appellant was sentenced to life imprisonment without the possibility of parole. (*Id.* at \*1.)

### 4. Our Prior Opinion

On appellant's and Lopez-Jaime's direct appeals, we affirmed the judgment. (*Nunez-Sharp, supra*, 2017 Cal.App.Unpub. LEXIS 1787, at \*1-\*2, \*64.) As relevant here, we rejected their challenge to the sufficiency of the evidence to support the robbery-murder special circumstance

10

finding. (*Id.* at \*55-\*58.) Citing our Supreme Court's then-recent decision in *Banks* (without citing its even more recent decision in *Clark*), we acknowledged that the substantial evidence standard of review required us to view the evidence in the light most favorable to the prosecution, and to determine whether a reasonable jury "could" find the prosecution had proved the elements of the special circumstance allegation beyond a reasonable doubt. (*Id.* at \*55-\*56, citing *Banks*, *supra*, 61 Cal.4th at 798.) We held "there was substantial evidence that both appellants were major participants in the underlying felony -- robbery of Gutierrez -- and acted with reckless indifference to human life." (*Nunez-Sharp*, at \*56.) With respect to appellant, we stated, "He was told before going to the victim's apartment that there was going to be a robbery. While at the apartment, he was told to look for the victim's jewelry while Lopez-Ja[i]m[]e held the victim. When given a signal by Lopez-Jaime, [appellant] Nunez-Sharp hit the victim. Nunez-Sharp admitted that he tied the victim's hands behind his back. He also admitted that he removed the victim's chain from his neck. When Nunez-Sharp left the apartment, the victim was unconscious, bound, naked, and lying face down on the floor with a ligature around his neck." (*Id.* at \*57.) We concluded, "Regardless of which appellant was the actual killer, they each met the requirements of the special circumstance statute. Because their actions far surpassed those of a mere getaway driver, appellants'

11

reliance on *Banks*, *supra*, 61 Cal.4th at pages 807-811 is misplaced."[1]  (*Nunez-Sharp*, at *57.)

### B. *Postconviction Proceedings*

In June 2019, appellant filed a habeas petition in the trial court, seeking relief from the robbery-murder special circumstance finding on the ground of insufficient evidence under *Banks* and *Clark*.  In August 2019, appellant filed a petition for resentencing under Section 1170.95.  By checking boxes on a preprinted form (which did not mention a petitioner's right to offer new or additional evidence at an evidentiary hearing), appellant requested the appointment of counsel, and alleged he could not presently be convicted of murder because:  (1) he was not the actual killer; (2) he did not act with the intent to kill as an aider and abettor; and (3) he was not a major participant in the underlying felony, or he did not act with reckless indifference to human life.  The court appointed the Los Angeles County Public Defender's

---

[1]     In *Banks*, our Supreme Court held that because the record before it established that the defendant was no more than a getaway driver in the underlying robbery, there was insufficient evidence to support a finding that the defendant was a major participant.  (*Banks*, *supra*, 61 Cal.4th at 794, 804-807; see also *id.* at 807-811 [separately holding there was insufficient evidence defendant acted with reckless indifference to human life].)

Office, which assigned deputy public defender Vernon Patterson (appellant's trial counsel).[2]

### 1. Motions and Briefing

In January 2020, appellant filed a motion for substitution of counsel. Alleging that Patterson had rendered ineffective assistance at trial and, as a result of an irreconcilable conflict, was certain to render ineffective assistance in the Section 1170.95 proceedings, appellant asked the court to replace Patterson with a "competent and [Spanish-]bilingual" attorney.

Later in January 2020, the prosecution opposed appellant's Section 1170.95 petition, arguing he was ineligible for resentencing because he could still be convicted of murder as a major participant in the robbery who acted with reckless indifference to human life. The prosecution further argued that because our prior opinion "already evaluated Defendant's conduct in light of *Banks*, the issue is *res judicata.*" On order of the court, the prosecution also filed an informal response to appellant's habeas petition, arguing the trial record contained substantial evidence to support the robbery-murder special circumstance finding under *Banks* and *Clark*.

On July 5, 2020, appellant filed a motion "to compel appointed counsel (Vernon Patterson) to perform his duty to

---

[2] Patterson did not represent appellant in connection with his habeas petition.

13

inform petitioner of the prior proceedings of his Penal Code § [1170.95] resentencing hearings and briefings, as well as his upcom[]ing hearings and briefings pertaining to this matter." Appellant alleged that Patterson had neither sent appellant a copy of the prosecutor's opposition (filed months earlier), nor informed appellant of the arguments that the prosecution had made and that Patterson might make on his behalf in reply.

Five days later (on July 10, 2020), Patterson filed a reply to the prosecution's opposition on appellant's behalf. The reply brief argued that neither the jury's special circumstance finding nor our prior opinion's affirmance of that finding rendered appellant ineligible for relief as a matter of law, as the jury had made its finding before *Banks* and *Clark* clarified the applicable standards, and our prior opinion had reviewed the trial evidence in the light most favorable to the judgment.

### 2. *Hearing and Rulings*

In July and August 2020, the court continued the proceedings on appellant's Section 1170.95 petition, and expressed its views that: (1) the jury's pre-*Banks* special circumstance finding did not render appellant ineligible for relief under Section 1170.95 as a matter of law; and (2) the court's impending ruling on appellant's habeas petition would not be "controlling" with respect to its ruling on his Section 1170.95 petition "because they're [subject to] different standards." Appellant's motions regarding

14

attorney Patterson were not brought to the court's attention by counsel, and the court did not address them. Appellant was never personally present before the court.

In September 2020, the court held a hearing on appellant's Section 1170.95 petition. Patterson argued appellant did not act with reckless indifference to human life, relying on appellant's testimony that he protested Lopez-Jaime's hitting Gutierrez and left the apartment while Gutierrez was still alive. The prosecutor argued the verdict showed the jury did not believe appellant's testimony. In a thorough oral ruling, the court denied the petition. As its "main" reason for concluding that appellant had failed to make a prima facie showing of entitlement to relief, the court concluded that under the doctrine of law of the case, it was bound by our prior opinion's perceived holding that appellant was a major participant in the robbery and acted with reckless indifference to human life under *Banks*. As an alternative reason for summarily denying the petition, the court reviewed the trial evidence and announced its "independent opinion" and "finding" that appellant was a major participant in the robbery and acted with reckless indifference to human life under *Banks* and *Clark*.[3]

---

[3] According to the Attorney General's reading of the court's comments in reviewing the trial evidence, the court concluded only that the record contained substantial evidence to support the special circumstance finding. This reading is undermined by the language quoted in the text, but supported by the court's statement that it was "not making a call on credibility." We need

*(Fn. is continued on the next page.)*

15

In October 2020, the court denied appellant's habeas petition. The court concluded that appellant was "procedurally barred from raising his claim that the special circumstance finding [must] be dismissed for insufficiency of the evidence," because our prior opinion had rejected an identical claim after *Banks* and *Clark* were decided. As an alternative reason for denying the petition, the court reviewed the trial evidence and concluded, "This court finds that [the] robbery[-murder] special circumstance allegation against Petitioner was supported by substantial evidence that he was the actual killer, or aided and abetted the robbery murder with intent to kill[,] or was a major participant in the robbery who acted with reckless indifference to human life."

Appellant timely appealed the order denying his Section 1170.95 petition.

## DISCUSSION

Appellant contends the court prejudicially erred by: (1) failing to consider his motion for substitution of counsel; and (2) denying his Section 1170.95 petition without issuing an order to show cause, in reliance on our prior opinion and the court's independent review of the trial evidence. We agree

---

not resolve whether the court acted as an independent factfinder or instead reviewed the record for substantial evidence, as we conclude -- with the benefit of authority issued after the court made its ruling -- that neither approach was proper at the prima facie stage.

16

with the latter contention, and therefore decline to consider the former.

### A. *Principles*

Section 1170.95 permits a defendant who was convicted of murder under a felony murder theory to petition the sentencing court to have the conviction vacated and to be resentenced on any remaining counts when, inter alia, the petitioner could not be convicted of murder after SB 1437's changes to the law.  (See § 1170.95, subd. (a)(3).)  These changes include the amendment of Penal Code section 189, subdivision (e) to provide that a defendant is not guilty of felony murder unless the defendant:  (1) was the actual killer; (2) acted with the intent to kill as an aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life, as described in the special circumstance statute.  (See Pen. Code, § 189, subd. (e); Stats. 2018, ch. 1015, § 3.)  The special circumstance statute's meaning was clarified (well before the enactment of SB 1437) in *Banks* and *Clark*, each of which articulated factors bearing on whether a defendant was a major participant in the underlying felony and acted with reckless indifference to human life.  (See *Banks*, *supra*, 61 Cal.4th at 803; *Clark*, *supra*, 63 Cal.4th at 618-623.)  In a recent case applying the *Banks* and *Clark* factors, our Supreme Court emphasized that "[d]etermining a defendant's culpability under the special circumstances

17

statute requires a fact-intensive, individualized inquiry." (*In re Scoggins* (2020) 9 Cal.5th 667, 683.)

After ascertaining that a Section 1170.95 petition contains certain required information, the court must appoint counsel for the petitioner (where requested), allow the parties to file briefs, and determine whether the petitioner has made a prima facie showing of entitlement to relief. (§ 1170.95, subd. (c); *Lewis*, *supra*, 11 Cal.5th at 960-968.) "[A]t the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis, supra*, at 974, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*); see also *Drayton*, at 980 [an example of prohibited factfinding is "determining whether the petitioner showed reckless indifference to human life in the commission of the crime"].) This prohibition against factfinding at the prima facie stage is subject to a limited exception: "'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis*, at 971, quoting *Drayton,* at 979.) "However, this authority to make [factual] determinations without conducting an evidentiary hearing . . . is limited to readily ascertainable facts from the record (such as the crime of conviction) . . . ." (*Drayton*, at 980.) "[T]he 'prima facie

bar was intentionally and correctly set very low.'" (*Lewis*, at 972.)

If the court determines the petitioner has made a prima facie showing, it must issue an order to show cause. (§ 1170.95, subd. (c).) If the parties do not thereafter stipulate that the petitioner is entitled to relief, the court must hold an evidentiary hearing, at which the prosecution bears the burden to prove the petitioner's ineligibility for relief beyond a reasonable doubt. (§ 1170.95, subd. (d).) "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*) In determining whether the prosecution has proved the petitioner could be convicted under a theory of murder that remains valid after SB 1437, the court must independently find the petitioner guilty under such a theory beyond a reasonable doubt. (See, e.g., *People v. Fortman* (2021) 64 Cal.App.5th 217, 225, review granted July 21, 2021, S269228 ["the People must convince the trial court, *as an independent trier of fact*, that the petitioner is guilty of murder on a still-valid theory beyond a reasonable doubt"].) A finding of substantial evidence does not suffice.[4] (See *ibid.*; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974.)

---

[4]     After this appeal was fully briefed, the Governor approved Senate Bill No. 775 (2021-2022 Reg. Sess.), effective January 1, 2022. (See Stats. 2021, ch. 551; Cal. Const., art. IV, § 8, subd. (c)(2).) This bill amends Section 1170.95 by, inter alia, (1) adding language rejecting the substantial evidence standard; (2) deleting *(Fn. is continued on the next page.)*

**B.** *Analysis*

We conclude the trial court erred in denying appellant's Section 1170.95 petition without issuing an order to show cause. Appellant undisputedly was convicted under a felony murder theory, and his petition alleged: (1) he was not the actual killer; (2) he did not act with the intent to kill as an aider and abettor; and (3) he was not a major participant in the underlying felony, or he did not act with reckless indifference to human life. If these allegations are true, appellant could not be convicted of murder after SB 1437's amendments to Penal Code section 189, subdivision (e), and he is entitled to resentencing. (See § 1170.95, subd. (a)(3); Stats. 2018, ch. 1015, § 3.) At the prima facie stage, the court was not permitted to deem appellant's allegations untrue on the basis of its own "fact-intensive" review of the evidence that appellant was a major participant in the robbery and acted with reckless indifference to human life. (*In re Scoggins, supra,* 9 Cal.5th at 683; see also *Drayton, supra,* 47 Cal.App.5th at 982 ["the *Banks* test, which governs the inquiry whether the defendant was a major participant in a felony[,] necessarily requires the weighing of facts and drawing inferences. [Citation.] The question whether [the

the language authorizing the parties to rely on the "record of conviction"; and (3) adding a statement that the court may consider "the procedural history of the case recited in any prior appellate opinion." (Stats. 2021, ch. 551, § 2.) We need not consider the potential relevance of these amendments, as we find reversible error under the law predating them.

20

defendant] acted with reckless indifference is a similarly multifaceted inquiry. [Citation.] In making an assessment of the [Section 1170.95] petitioner's prima facie showing, the trial court should not have evaluated and weighed the evidence but instead should have accepted petitioner's asserted facts as true" (footnote omitted)]; *People v. Montes* (2021) 71 Cal.App.5th 1001, 1008 ["The final ground on which the trial court found appellant ineligible for relief was because appellant 'was a major participant who acted with reckless disregard for human life.' We believe this constitutes inappropriate factfinding by the trial court at the initial prima facie stage of this process"].) Instead, the court was required to accept appellant's allegations as true, and to issue an order to show cause, unless readily ascertainable facts from the record of conviction refuted his allegations as a matter of law. (See *Drayton, supra*, at 980; *Lewis, supra*, 11 Cal.5th at 974.) Below, we conclude nothing in the record of conviction did so.

As the trial court itself concluded, and contrary to the Attorney General's contention, the jury's pre-*Banks* special circumstance finding did not refute appellant's allegations as a matter of law. This issue, which has divided the Courts of Appeal, is pending review in our Supreme Court.[5] Pending

---

[5] The Supreme Court has granted review in *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606, to resolve the following issue: "Does a felony-murder special circumstance finding (Pen. Code, § 190.2, subd. (a)(17)) made before [*Banks*] and [*Clark*] preclude a

*(Fn. is continued on the next page.)*

guidance from the Supreme Court, and consistent with our prior decisions on this issue, we follow those cases holding that "a pre-*Banks* and *Clark* special circumstance finding cannot preclude eligibility for relief under . . . section 1170.95 *as a matter of law*, because the factual issues that the jury was asked to resolve in a trial that occurred before *Banks* and *Clark* were decided are not the same factual issues our Supreme Court has since identified as controlling." (*People v. York* (2020) 54 Cal.App.5th 250, 258, review granted Nov. 18, 2020, S264954; see also, e.g., *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179, review granted Jun. 24, 2020, S262011.)

We further conclude that appellant's allegations were not refuted as a matter of law by our prior opinion's analysis of the sufficiency of the evidence supporting the special circumstance finding. It is true that our opinion made certain unequivocal statements about appellant's conduct, and about his conduct's satisfaction of the standards articulated in *Banks*. (See *Nunez-Sharp*, *supra*, 2017 Cal.App.Unpub. LEXIS 1787, at *57 [stating appellant "met the requirements of the special circumstance statute" as construed in *Banks* because, inter alia, he left Gutierrez "with a ligature around his neck," without mentioning

_____

defendant from making a prima facie showing of eligibility for relief under Penal Code section 1170.95?" (*Issues Pending Before the California Supreme Court in Criminal Cases* (December 2021) California Supreme Court<https://www.courts.ca.gov/ documents/DEC2321crimpend.pdf> [as of Dec. 23, 2021].)

appellant's contrary claims that he left before any ligature was applied to Gutierrez's neck].)  But those statements reflected our presumption of all facts in support of the judgment that the jury reasonably could have found, viewing the evidence in the light most favorable to the prosecution.  (See *id.* at \*55-\*58; *People v. Morales* (2020) 10 Cal.5th 76, 88 [court applying substantial evidence standard ""'"presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence"'""].)  We did not hold that the jury necessarily found the facts as we stated them.  (Cf. *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1008 ["In assessing how the evidence reasonably could have been evaluated by the trier of fact, an appellate court . . . must indulge reasonable inferences that the trier of fact *might have* drawn from the evidence" (italics added)]; *id.* at 1006 ["an appellate court that gives appropriate deference to the trier of fact will not be in a position to detect or correct some of [the trier's factual] errors"].)  Nor did we find those facts ourselves.  (See *People v. Rodriguez* (1999) 20 Cal.4th 1, 12-14 [reversing one Court of Appeal opinion, and disapproving another, for engaging in "appellate factfinding" in reviewing convictions for sufficient evidence].)

In light of the limited scope of our prior opinion's relevant holding, it was binding on the trial court only with respect to the conclusion that the trial record contained substantial evidence that appellant was a major participant in the robbery and acted with reckless indifference to human

23

life under *Banks*. (See *Investors Equity Life Holding Co. v. Schmidt* (2015) 233 Cal.App.4th 1363, 1377 ["'As its name suggests, the [law of the case] doctrine applies only to an appellate court's decision on a question of law; it does not apply to questions of fact'"].) This conclusion did not warrant denial of appellant's petition, because -- as appellate courts held after the trial court denied the petition in September 2020 -- substantial evidence of guilt under a still-valid theory of murder is insufficient to render a petitioner ineligible for relief. (See, e.g., *People v. Lopez, supra*, 56 Cal.App.5th at 949, rev.gr. [noting in October 2020 that "only one other court has weighed in on the nature of the required showing of ineligibility at the [evidentiary] hearing stage," and disagreeing with that court's holding that substantial evidence was sufficient].) We conclude our prior opinion did not prevent appellant from clearing the "'very low'" bar set by the Legislature at the prima facie stage. (*Lewis, supra*, 11 Cal.5th at 972.) Because nothing in the record of conviction rendered appellant ineligible for relief as a matter of law, we conclude the trial court erred in denying his petition without issuing an order to show cause.[6]

---

[6] We are not persuaded by the Attorney General's reliance on the Court of Appeal's opinion in *People v. Lewis* (2020) 43 Cal.App.5th 1128, rev'd and remanded 11 Cal.5th 952. The judgment of the Court of Appeal was reversed by our Supreme Court. (*Lewis, supra*, 11 Cal.5th at 975.) In any event, the Court of Appeal's analysis is inapplicable here, because it relied on a prior appellate opinion that -- unlike our prior opinion --
*(Fn. is continued on the next page.)*

## C. *Remand*

In opposing reversal and remand, the Attorney General does not dispute that appellant was prejudiced by the trial court's reliance on our prior opinion and its own review of the evidence, absent which the court would have issued an order to show cause and proceeded to an evidentiary hearing. (See *Lewis*, *supra*, 11 Cal.5th at 974 [to show prejudice from erroneous denial of request for counsel at prima facie stage, petitioner must show reasonable probability that assistance of counsel would have yielded more favorable result, i.e., that "'"his [or her] petition would not have been summarily denied without an evidentiary hearing"'"].) Instead, the Attorney General argues remand is futile because the court's denial of appellant's *Banks*/*Clark* claim on habeas review will preclude him from obtaining relief under Section 1170.95 (implicitly, under the doctrine of issue preclusion).

We disagree that remand for an evidentiary hearing is futile. Because the court denied the habeas petition summarily (without issuing an order to show cause), its ruling will not have preclusive effect in future proceedings. (See *People v. Torres*, *supra*, 46 Cal.App.5th at 1180, fn. 4;

---

determined what the jury *actually* had found. (See *People v. Lewis*, *supra*, 43 Cal.App.5th at 1138-1139 [prior appellate opinion refuted Section 1170.95 petitioner's allegation that he was not direct aider and abettor, where prior opinion held that record established jury convicted defendant as direct aider and abettor, rendering instruction on invalid alternative theory harmless beyond a reasonable doubt].)

*Gomez v. Superior Court* (2012) 54 Cal.4th 293, 305, fn. 6.) Further, as the court recognized, its ruling on appellant's habeas petition is not "controlling" with respect to its ruling on his Section 1170.95 petition "because they're [subject to] different standards." (See *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825 [issue preclusion applies only where "identical" issue was actually litigated and necessarily decided in prior proceeding].) As the court reasoned in deeming the habeas petition procedurally barred, the habeas petition raised the same legal issue we resolved against appellant on direct appeal, viz., whether the jury's special circumstance finding was supported by substantial evidence in the trial record. (See *Nunez-Sharp, supra*, 2017 Cal.App.Unpub. LEXIS 1787, at *55-*58; *In re McDowell* (2020) 55 Cal.App.5th 999, 1008 [*Banks/Clark* habeas claim was subject to "deferential" review of record for substantial evidence].) In contrast, appellant's Section 1170.95 petition raises the factual issue whether the prosecution has proved beyond a reasonable doubt that he is guilty under a still-valid theory, taking into account any new or additional evidence admitted at the evidentiary hearing.[7] (See

---

[7]   It is immaterial that, as the Attorney General observes, appellant has not yet "indicated that any new evidence would be presented on the [Section 1170.95] issue." Appellant was entitled to rely at the prima facie stage on the presumption that his factual allegations were true. (See *Lewis, supra*, 11 Cal.5th at 974.) Moreover, the record does not show appellant had a meaningful opportunity in the trial court to indicate whether he
*(Fn. is continued on the next page.)*

26

§ 1170.95, subd. (d); *People v. Fortman, supra,* 64 Cal.App.5th at 225, rev.gr.)

Accordingly, we will reverse the order denying appellant's Section 1170.95 petition and remand to the trial court with directions to issue an order to show cause and proceed in accordance with the statute. After the court issues the order to show cause, appellant's right to counsel under Section 1170.95 will be protected by due process concerns. (See *Lewis, supra,* 11 Cal.5th at 973 [analogizing to due process right to counsel in habeas proceedings].) Mindful of this protection, we will additionally direct the court to consider the merits of appellant's motion for substitution of counsel.[8]

---

might offer new or additional evidence, given that: (1) he was never personally present before the court; (2) the preprinted form on which he filed his petition lacked any reference to his right to offer new or additional evidence; (3) as the Attorney General acknowledges, only a few days before attorney Patterson filed a reply brief on appellant's behalf, appellant "alleged that Mr. Patterson had not provided him with a copy of the People's opposition or consulted with him about the issues in the case"; and (4) his motions concerning Patterson were never addressed by counsel or the court.

[8]   The Attorney General argues appellant abandoned his motion for substitution of counsel, "[p]articularly" by filing his subsequent motion to compel Patterson to communicate with him about the issues. We disagree that the motion for substitution of counsel was abandoned, but express no opinion whether the court erred by failing to consider it at the prima facie stage.

27

## DISPOSITION

The order denying appellant's petition for resentencing under Section 1170.95 is reversed.  The matter is remanded to the trial court with directions to issue an order to show cause, consider the merits of appellant's motion for substitution of counsel, and proceed in accordance with Section 1170.95.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

CURREY, J.

MICON, J.*

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.